**Lillian P. NICKLES, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 70–93.**

United States District Court,
D. South Carolina,
Greenville Division.

May 11, 1971.

John B. Culbertson, Greenville, S. C., for plaintiff.

John K. Grisso, U. S. Atty., and Oscar W. Bannister, Jr., Asst. U. S. Atty. for Dist. of South Carolina, for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, as amended (42 U.S.C.A. § 405(g)), to obtain judicial review of a "final decision" of the Secretary of Health, Education, and Welfare, denying her claim for disabled widow's benefits under the Social Security Act.

The plaintiff filed an application for benefits as the disabled widow of a fully insured wage earner on July 25, 1968, alleging her condition became disabling in 1952 when she was 40 years old. The application was denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, after the South Carolina State Agency, upon evaluation of the evidence by a physician and a disability examiner had found plaintiff was not under a disability. In her request for a hearing, the plaintiff waived her right to appear in person to give evidence. Thereupon the hearing examiner considered the case *de novo*, and on September 23, 1969, found that the plaintiff was not under a disability.

Following denial of her request for review of the hearing examiner's decision by the Appeals Council, the plaintiff brought action in this court requesting judicial review of the decision. On motion of the defendant, the court remanded the case to the Secretary of the Department of Health, Education, and Welfare for the taking of additional evidence. Upon receipt of such additional evidence and consideration of the entire record, the Appeals Council rendered a decision on November 18, 1970, finding that the plaintiff was not entitled to disabled widow's benefits under the Social Security Act. Hence, the decision of the Appeals Council became the "final decision" of the Secretary.

The record contains considerable evidence of plaintiff's claimed disability. She suffers from arthritis, obesity, and a hysterical type personality. Her most serious ailment is diabetes mellitus from which condition she has suffered at least since 1952. The record reveals that she requires daily medication for that condition and has had only moderate success in keeping it under control. The record reveals a vascular insufficiency in the plaintiff's lower extremities, loss of viratory sensation in the toes, and one fairly recent episode of a diabetic sore with neurosis requiring a period of hospitalization.

The medical evidence of record indicates some difference of opinion as to the gravity of the plaintiff's condition. The scope of this court's review in appeals from the decision of the Secretary is not plenary but limited to consideration of whether the decision of the Secretary is supported by substantial evidence in the record. (*E. g.* Hendrix v. Finch, 310 F.Supp. 513 (D.S.C.1970)). However, the court must scrutinize the record as a whole and assume responsibility for the reasonableness and fairness of the decision. (Lovingood v. Celebrezze, 218 F.Supp. 834 (D.S.C.1963)).

The court is of the opinion that there is substantial evidence of record to support the decision of the Secretary. That determination, however, is not sufficient to discharge the responsibility of the court in this instance. Even though the record contains substantial evidence warranting the decision of the Secretary, it is the court's further responsibility to insure that the plaintiff is afforded a determination of his claim upon a proper legal standard. (Ferran v. Flemming, 293 F.2d 568 (5th Cir. 1961)).

With respect to disability benefits for widows the Social Security Act provides:

(B) A widow, surviving divorced wife, or widower shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity. (42 U.S.C.A. § 423(d) (2) (B))

In accordance with that directive the Secretary has promulgated comprehensive regulations stating the symptoms which must exist in order to establish disability for the purpose of entitlement to widows' benefits. With respect to diabetes those regulations provide:

"DIABETES MELLITUS—

A. When diabetes exists with other physical or mental impairments, evaluate under the criteria for the appropriate body systems; or

B. Diabetes with one of the following (not covered under existing body system listing):

1. Neuropathy with moderate motor deficit in two extremities; or

2. Acidosis occurring at least on the average of once every two months, documented by appropriate blood chemical tests (pH or $pCO_2$ or bicarbonate levels); or

3. Amputation at, or above, the tarsal region due to diabetic necrosis or peripheral vascular disease; or

4. Ophthalmologic findings of:

a. Retinitis proliferans; or

b. Rubeosis iridis; or

c. Venous distention and capillary pattern distortion with hemorrhages or exudates.

(Appendix to Social Security Administration Reg. #4, Subpart P, Paragraph 9.08).

■■ The court recognizes that Congress intended a more stringent standard for widows' disability than for wage earners' disability. (Hendrix v. Finch, 310 F.Supp. 513 (D.S.C.1970)). It knows further that where an act directs that regulations be published, the publishing authority is allowed considerable latitude in formulating those regulations. Only where the regulation of the Secretary is arbitrary or not in accordance with the intent of Congress as expressed in the statute should it be disregarded by the court. (*E. g.* Marion v. Gardner, 359 F.2d 175 (8th Cir. 1966)).

It is the present opinion of the court that the above set forth regulation regarding diabetes is not valid. Regrettably, the present record does not contain evidence on this question. The court feels that in this type case its responsibility to the plaintiff is not met simply by noting that plaintiff did not challenge the validity of the regulation or present evidence in that regard. Plaintiffs in these cases are generally ill-educated, the procedure is not a true adversary one, and many attorneys in representing social security claimants seem to do a volume business with little preparation going to each case.

Diabetes mellitus can be accompanied by various distressing symptoms, the most onerous of which are listed by the Secretary in his regulation. The symptom which appears to give the present claimant most difficulty is decreased circulation in her legs. That is a symptom recognized by the Secretary in his regulation. However, the Secretary's regulation requires that, where decreased circulation to the lower extremity is the most serious manifestation of the disease, circulation must have deteriorated to the point that one of the feet have been amputated above the instep. Amputation of the lower extremities does result with some frequency from decreased circulation due to diabetes. The increased sugar content of the blood coupled with the decreased circulation may make amputation necessary to stop the spread of infection or the circulation

may be so impaired that necrosis occurs. This court, however, is convinced that the Congress did not intend any such restrictive requirement to qualify for Social Security disability benefits.

■ The language of the statute is that in order to qualify the claimant must have such impairment as to "preclude an individual from engaging in any gainful activity." The requirement that diabetes mellitus, a chronic disorder of carbohydrate metabolism, has progressed to the stage that amputation has been performed is unduly restrictive. The Act neither requires or authorizes such regulation. A requirement that diabetes has resulted in amputation at or above the tarsal region in a prospective claimant above the age of 50 years of age,[1] is, as a practical matter, tantamount to the requirement that he be bedridden. It is unlikely that one of that age and distressing physical condition would make sufficient recovery from an amputation to regain independent mobility. While it may happen, the court does not think it is to be expected and notes that many, if not substantially all, claimants can only earn by physical labor. The regulation stating that the leg must have been severed before the commencement of the period of disability is totally unrealistic.

The regulation recognizes certain other symptoms of diabetes mellitus by making them, together with amputation, sufficient to provide requisite disability. The court notes that most persons with a serious diabetic condition die of a circulatory problem caused by the effect of the disease upon the blood vessels. (Lawyers Medical Cyclopedia, Vol. 4 supp., p. 501 (1968)). Item 4 of the Secretary's regulation as well as Item 1, if neuropathy is caused by decreased blood supply to the nerve, recognize other disabling results of decreased circulation. The court feels that those symptoms are also indicative of a very serious condition. Acidosis, allowed for in Item 2, if not corrected immediately, leads to coma and death. Occurrence of acidosis with the frequency indicated by the regulation also indicates that the disease is in a far advanced and very dangerous stage.

Diabetes ranks eighth as a cause of death in the United States. It is both a frequently encountered and very serious ailment. This court is of the opinion that the regulation discussed above requires the disease to have progressed to the point that a claimant be in imminent danger of death in order to qualify for widows' disability benefits. That requirement is not in accordance with the Act and cannot be enforced by the court.

■ The decision of the Secretary as well as the opinions of his medical advisors was that the plaintiff is not entitled to benefits because she did not meet the requirement of the regulation. The court does not think that the regulation sets forth the proper legal standard. Therefore, the case must be remanded to the Secretary in order that he may determine whether the plaintiff is able to engage in "any gainful activity." If, upon remand, the Secretary, being aggrieved by the disregard of the regulation by this court, chooses to present the testimony of experts justifying the regulation, he may, of course, do so. In that case, the court will again consider the validity of the regulation. The court regrets the lack of such testimony prior to this decision, but felt that, in view of its grave, if premature, doubt of the validity of the regulation, its responsibility required the questioning of that regulation.

The court would also note that the acquisition of "control" of diabetes at a point in time and the maintenance of that control may be quite different problems. That the disease appears controlled at the time of one medical examination does not mean that that control will be maintained.

1. 42 U.S.C.A. § 402(e) indicates that a widow or widower is not entitled to disability benefits unless he or she is at least 50 years of age.

Therefore, this matter is remanded to the Secretary for the further proceeding above indicated.

And it is so ordered.