677 F.2d 1351
 John BROZ, Plaintiff-Appellee,
v.
Richard S. SCHWEIKER, Secretary of Health & Human Services,
a Department of the United States Government,
Defendant-Appellant.
Richard D. HOLMES, Plaintiff-Appellee,
v.
Richard S. SCHWEIKER, The Secretary of Health and Human
Services, Defendant-Appellant.
Corrine LITTLE, Plaintiff-Appellee,
v.
Richard S. SCHWEIKER, Secretary of the Department of Health
and Human Services, Defendant-Appellant.
Thomas O. JONES, Plaintiff-Appellee,
v.
Richard S. SCHWEIKER, Secretary, Department of Health and
Human Services, Defendant-Appellant.
Fred SOESBE, Plaintiff-Appellee,
v.
Richard S. SCHWEIKER, Secretary of Health and Human
Services, Defendant-Appellant.
 Nos. 81-7140, 81-7143, 81-7336, 81-7370 and 81-7466.
 United States Court of Appeals,
Eleventh Circuit.
 June 7, 1982.
 
 Anne Buxton Sobol, Dept. of Justice, Civil Division, Federal Programs Branch, Washington, D. C., for defendant-appellant in all cases.
 Thomas H. Figures, Asst. U. S. Atty., Mobile, Ala., for defendant-appellant in No. 81-7140.
 E. T. Rolison, Jr., Mobile, Ala., for defendant-appellant in Nos. 81-7143, 81-7466.
 Ginny S. Granade, Asst. U. S. Atty., Mobile, Ala., for defendant-appellant in No. 81-7370.
 Joseph E. Carr, IV, Legal Services Corp. of Ala., Mobile, Ala., for plaintiff-appellee in No. 81-7140.
 Steven Emens, Alabama Legal Services, Tuscaloosa, Ala., for plaintiff-appellee in No. 7143.
 Michael J. Salmon, Gulf Shores, Ala., for plaintiff-appellee in No. 81-7336.
 Daniel L. McCleave, Mobile, Ala., for plaintiff-appellee in No. 81-7370.
 Nettles, Cox & Barker, Kenneth O. Simon, Mobile, Ala., for plaintiff-appellee in No. 81-7466.
 Appeals from the United States District Court for the Southern District of Alabama.
 Before GODBOLD, Chief Judge, HENDERSON and MERRITT*, Circuit Judges.
 GODBOLD, Chief Judge:
 
 
 1
 In these five consolidated appeals we decide the validity of the Department of Health and Human Services' Medical-Vocational Guidelines, popularly known as the "grid regulations," which are employed in determinations of Social Security disability benefits.[1] These regulations appear at 20 C.F.R. part 404, subpart P, Appendix 2 (1981), and were promulgated in 1978 under the Federal Old-Age, Survivors, and Disability Insurance Benefits portion of the Social Security Act, 42 U.S.C. § 401 et seq.[2] In each of these cases disability benefits were denied on the basis of these grid regulations after a hearing conducted by an Administrative Law Judge. Each case was appealed to the Southern District of Alabama where a United States magistrate recommended that the grid regulations be held invalid and that the decision of the ALJ be reversed and remanded for reconsideration apart from the regulations. The district court adopted the magistrate's proposed findings and recommendations as its own findings of fact and conclusions of law. The Secretary of Health and Human Services appeals.
 
 
 2
 After a description of the grid regulations, we address first the question common to all of these cases, namely, the validity of the regulations, and then turn to alleged erroneous findings and procedures in the individual cases. We conclude that the regulations as they have been applied are invalid because they conclusively determine the effect of age on disability, but that they are capable of valid application by providing an individual determination of the age factor.
 
 I. The Act and the regulations
 
 3
 The Act provides benefits to qualified individuals who are disabled. 42 U.S.C. § 423(a)(1). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any (permanent) medically determinable physical or mental impairment." Id. at § 423(d)(1)(A). Some impairments are per se disabling. 20 C.F.R. § 404.1525 (1981). For those not per se disabling a two-stage analysis is used to determine whether an impairment is disabling. A claimant must first show an impairment serious enough to prevent work in his or her previous job. Here the burden of proof is on the claimant. Ferguson v. Schweiker, 641 F.2d 243, 246 (5th Cir. 1981). If this burden is met the burden shifts to the Secretary to prove that the claimant is capable, "considering his age, education, and work experience, (of) engag(ing) in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (emphasis added).[3]
 
 
 4
 The Medical-Vocational Guidelines come into play at this second stage. Part of these regulations provide a general framework to guide the ALJ in his analysis of the medical and vocational facts that bear on his determination of whether a claimant is capable of performing other substantial gainful employment. 20 C.F.R. § 404.1545-.1573 (1981). The part of the regulations at issue here, Appendix 2 to 20 C.F.R. part 404, subpart P, is no mere guideline, however, but is a detailed grid system directing a conclusion in certain cases on the issue of ability to perform other substantial work, based on the claimant's age, education, and work experience characteristics. These grid regulations are structured in this fashion: The ALJ first ascertains a claimant's "residual functional capacity," which involves findings as to the claimant's ability to lift weight, sit, stand, push, and pull. 20 C.F.R. § 404.1567 (1981). For claimants found capable of sedentary, light, or medium work, the regulations provide three tables, one corresponding to each level of residual functional capacity. These tables account for the vocational factors of age, education, and work experience, which are mentioned in the statute. 42 U.S.C. § 423(d)(2)(A). The ALJ determines a claimant's age, education, and work experience and reads from the appropriate table and line the conclusion of whether the claimant is disabled.
 
 
 5
 When the grid regulations apply, they leave no discretion to the ALJ, for they direct the ultimate conclusion of whether a claimant is capable of other substantial gainful work in the national economy. Where the grids do not apply, however, the ALJ determines for himself, under the general guidelines accompanying the grids, whether the claimant is capable of other substantial work. 20 C.F.R. part 404, subpart P, App. 2 § 200.00(a), (d). The grid regulations do not apply unless each factor in the matrix is met by a characteristic of the claimant. Id. There are two notable exclusions from the grids. At a given residual functional capacity, if a claimant is capable of some work at that level but not a full range of work, then that level of the grids is not applicable. Id. at §§ 201.00(h), (i), 202.00(b); see 43 Fed.Reg. 9284, 9300. Accord Santise v. Schweiker, 676 F.2d 925, 934 (3d Cir. 1982); Kirk v. Secretary, 667 F.2d 524, 529 (6th Cir. 1981). Second, in determining residual functional capacity only exertional limitations are considered, i.e., ability to lift, stand, push, pull, handle, etc. If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities[4]-for example, sensory impairments such as skin or respiratory sensitivity and mental or emotional impairments-then the grid regulations do not apply. Id. at § 200.00(e).
 
 II. Validity of the regulations
 A. Introduction
 
 6
 The effect of the Medical-Vocational Guidelines can be described in different ways. First, in directing a conclusion as to a claimant's ability to perform other substantial work, the essential effect of the Guidelines is to remove this ultimate issue from adjudication. Once a claimant's residual functional capacity, age, education, and work experience are known, the determination of whether the claimant is capable of substantial work in the national economy is made by the Secretary's regulations and not by the ALJ. Second, under the regulations, vocational expert testimony to support a conclusion of not disabled is unnecessary, and vocational expert testimony contradicting the conclusion is irrelevant. Thus, the regulations might be viewed as supplying the evidence necessary to discharge the agency's burden of proving by substantial evidence that a claimant no longer able to perform his previous work is capable of other substantial gainful activity. Third, the regulations might also be viewed as taking administrative notice of certain facts; that is, the regulations are based on the agency's observation that a substantial number of unskilled sedentary, light, and medium occupations exist in the national economy, and the agency's observation of the physical requirements for these jobs. See Appendix 2, supra, at §§ 201.00(a), 202.00(a), 203.00(a).
 
 
 7
 Correspondingly, in this case three lines of attack are made on the regulations: (1) They deprive a claimant of the right to an individual determination of disability by an ALJ at a hearing; (2) they improperly relieve the Secretary of the burden of demonstrating by substantial evidence that a claimant is capable of other substantial work; and (3) they fail to allow a claimant an opportunity to rebut the facts that are administratively noticed through the regulations.
 
 
 8
 B. The right to a hearing versus the authority to rulemake
 
 
 9
 (1) The statutory language
 
 
 10
 The Act confers the right to a hearing and to have an initial disability determination affirmed, reversed, or modified on the basis of evidence adduced at the hearing. 42 U.S.C. § 405(b). The regulations have the effect of removing from ALJs, who conduct such hearings, the ultimate decision of the claimant's ability to perform other substantial gainful work and relegating to determination at the hearing only the subsidiary facts of residual functional capacity, age, education, and work experience. The regulations direct, for instance, that a 45-year old claimant capable of sedentary work with no transferable work skills and only limited education is not disabled. 20 C.F.R. part 404, subpart P, Appendix 2 § 201.18. This determination is conclusive and is made on the basis of facts noticed in the rulemaking where the regulations were promulgated. Claimants argue that the conclusiveness of this determination, made on the basis of facts not adduced at the hearing, violates 42 U.S.C. § 405(b).
 
 
 11
 On the other hand, the Secretary relies on the broad rulemaking powers under the Act to justify the regulations:
 
 
 12
 The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions.
 
 
 13
 42 U.S.C. § 405(a). There are also more specific provisions directed toward the issue of disability:
 
 
 14
 § 405(a):
 
 
 15
 The Secretary ... shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.
 
 
 16
 § 423(d)(5):
 
 
 17
 An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.
 
 
 18
 The problem we face, then, in the words of Professor Kenneth Culp Davis, is how "to fit together two statutory provisions, the one conferring the right to 'full hearing,' and the other conferring power to make substantive rules." K. Davis, 2 Administrative Law Treatise § 12.16, at 467 (1979). The Secretary clearly has a degree of authority to promulgate substantive rules governing the determination of disability, yet any such rule necessarily removes some issues from adjudication that otherwise might have been subject to proof by a claimant at the hearing guaranteed by the Act.
 
 
 19
 (2) The principle of construction
 
 
 20
 The principle to guide the agency and the courts in harmonizing a claimant's statutory right to a hearing and the Secretary's substantive rulemaking powers is found in the well established distinction between legislative and adjudicative facts. Where only legislative facts are involved it is proper to rulemake; adjudicative facts, however, must be determined at a hearing. We emphasize that this distinction is employed here as a principle to guide in the construction of this statutory scheme and is not necessarily a matter of constitutional due process.
 
 
 21
 The legislative/adjudicative fact distinction, first articulated by Professor Davis in An Approach to Problems of Evidence in the Administrative Process, 55 Harv.L.Rev. 364, 404-07 (1942), has become a cornerstone of modern administrative law theory and has been widely accepted in the federal appellate courts. See Association of National Advertisers Inc. v. FCC, 627 F.2d 1151, 1162-63 & n.20 (D.C.Cir.1979), cert. denied, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980) (collecting cases from six circuits, including Drummond v. Fulton County Dept. of Family & Children's Services, 563 F.2d 1200, 1210 (5th Cir. 1977) (en banc), cert. denied, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978)). Accord, K. Davis Treatise, supra, at § 15:2. Speaking broadly, adjudicative facts are those about the immediate parties, and legislative facts are all others. Id. at § 15:3, p. 143. " 'Legislative facts ... apply universally, while adjudicative facts are those developed in a particular case.' " U.S. v. Bowers, 660 F.2d 527, 531 (5th Cir. 1981) (quoting U.S. v. Gould, 536 F.2d 216, 220 (8th Cir. 1976)).
 
 
 22
 The legislative/adjudicative fact distinction is well suited to dovetailing the right to a hearing and the power to rulemake because the distinction preserves the essential function of each process and assigns to each process the matters best dealt with by each: " 'Trials are at their best when specific adjudicative facts are in dispute. Trials are seldom desirable either on legislative facts or on broad factual issues.' " Drummond, supra, 563 F.2d at 1210 (quoting K. Davis, Administrative Law of the Seventies § 7.00-11 at 276 (1976)). Instead, "determination (of legislative facts) is particularly appropriate to the administrative (rule-making) process." Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224 (5th Cir. 1976). Trial procedure is best suited for adjudicative facts because the best source of information about specific facts concerning the individual parties is the parties themselves. Facts that concern scientific truths, sociological data, and industrywide practices, on the other hand, are not peculiarly within the knowledge of the parties and are not of the type that generally would be aided by viewing the demeanor of witnesses, by cross-examination, and other aspects of adversarial factual development. See generally, K. Davis Treatise, supra, at §§ 12:4, 15:3.
 
 
 23
 Construction of the Act in this fashion accords with scholarly opinion: "A statute (that) requires (a hearing on the record) can and should be interpreted ... not to require trial procedure on issues of broad legislative fact, because the purpose behind such a statute is always to require trial procedure on issues of adjudicative fact ...." Id. at § 14:13, p. 11. The Supreme Court has also recognized that a broad hearing requirement must give way in appropriate circumstances to rulemaking authority: "We do not read the hearing requirement ... as withdrawing from the (Secretary) the rulemaking authority necessary for the orderly conduct of business." See U.S. v. Storer Broadcasting Co., 351 U.S. 192, 202, 76 S.Ct. 763, 770, 100 L.Ed.2d 1081 (1956) (upholding FCC regulations that determine maximum number of broadcast licenses one individual can own in the public interest, despite right to a hearing when an application is denied).
 
 
 24
 Interpretation of the Act in terms of legislative and adjudicative facts is suggested in the Seventh Circuit's recent opinion upholding the validity of the grid regulations. That court observed that
 
 
 25
 (i)f the statutory term "disability" described a historical (i.e., adjudicative) fact best or only ascertainable on a case-by-case basis, binding criteria might be a problem; but it does not.... A judgment (of disability), to be well informed, requires a broad knowledge of the labor market.
 
 
 26
 Cummins v. Schweiker, 670 F.2d 81, 83 (7th Cir. 1982). Other circuits that have reviewed the validity of the regulations have also emphasized the need for an individual determination of adjudicative facts. Santise v. Schweiker, 676 F.2d 925, 934 (3d Cir. 1982) ("the statute (demands that) the denial of disability benefits be the product of individualized fact finding, i.e., ... taking into account each applicant's peculiar characteristics" ). See Kirk v. Secretary, 667 F.2d 524, 530 (6th Cir. 1981).[5] Finally, the prior caselaw deciding the validity of other disability regulations is consistent with this distinction. Regulations that attempt to determine conclusively that a particular impairment is not disabling have consistently been invalidated, Marion v. Gardner, 359 F.2d 175 (8th Cir. 1966) (regulation precluding personality disorders unless accompanied by severe psychosis); Nickles v. Richardson, 326 F.Supp. 777 (D.S.C.1971) (regulation excluding diabetes unless it resulted in amputation); Wooley v. Gardner, 283 F.Supp. 576 (E.D.Pa.1968) (regulation excluding hypertension unless accompanied by certain physiological effects), whereas regulations that define other aspects of the disability determination that are not focused on the individual characteristics of the applicant but instead address broader questions of economic and sociological fact have been upheld, King v. Finch, 313 F.Supp. 909, 914 (N.D.Ohio 1970) (regulation defining what level of compensation is "substantial"); Levine v. Ribicoff, 201 F.Supp. 692 (S.D.N.Y.1962) (regulation defining what are "wages paid" ).
 
 
 27
 To summarize our holding, because both the broad hearing provision and the broad rulemaking provision in the statute must be given their intended play, they should operate in areas where they are best suited. This is accomplished by restricting rulemaking to legislative facts and requiring determination of adjudicative facts in a hearing. The distinction between the two sets of facts is not a bright line one, see K. Davis Treatise, supra, at §§ 12:3, 15:3, and so the Secretary should be given discretion in construing the Act in borderline situations.[6] Therefore, the regulations are valid if they refrain from determining what are fairly classified as adjudicative facts.
 
 
 28
 (3) Application of the legislative/adjudicative fact distinction
 
 
 29
 We now review the regulations to determine if they confine themselves to nonadjudicative facts. As discussed above, the regulations come into play at that stage of the disability determination where the issue is whether the claimant can perform substantial gainful employment other than his former job. There are two elements in this determination. First, it is necessary to decide what capabilities and qualifications the claimant has, namely, residual functional capacity, age, experience, and education. Second, it is necessary to determine whether there are a substantial number of jobs in the national economy that a person with these characteristics can perform. Generally speaking, the first element is a matter of adjudicative fact; the second is not. The first looks to the individual characteristics of the claimant. This is clearly adjudicative. The second element looks to conditions of the national job market. It is concerned with broad sociological data that is not related to the individual parties. It therefore concerns nonadjudicative matters.
 
 
 30
 For the most part the regulations are consistent with this outline. They leave for case-by-case determination the critical factor, which is the physical capability of the claimant. If the claimant is found to have the exertional capacity to perform sedentary work, for instance, and has no nonexertional impairments, then the grids are consulted for the disability determination. In the majority of cases the claimant is found not disabled regardless of his education and experience because the grids determine that there are a substantial number of unskilled jobs in the national economy. Where it is necessary to evaluate a claimant's ability to perform skilled work, and education and experience thus become critical to the disability determination, these two factors are open to individual adjudication in terms of the claimant's specific skills. A claimant's education is evaluated in terms of the degree to which it has conferred job skills. 20 C.F.R. § 404.1564 (1981); see note 8 infra. Work experience is likewise evaluated in terms of the specific skills learned and the extent to which these skills are transferable to other jobs. Id. at § 404.1565. Thus, for the three factors of residual functional capacity, education, and work experience, the regulations "are premised on the necessity to adjudicate each case individually to determine what work a specific individual is able to do." The regulations remove from adjudication only "the kinds and numbers of jobs that exist in the national economy and their skill and exertional requirements." 43 Fed.Reg. 55349, 55352 (1978). In large part, then, the regulations properly allocate legislative and adjudicative facts between rulemaking and the hearing.
 
 
 31
 The final factor is age. Age is relevant under the grid regulations in this manner: The grids operate with the premise that, at a certain point, age significantly restricts a worker's ability to adapt and adjust to a new job and a new working environment. Id. at § 404.1563(a).[7] For instance, the sedentary grid determines that a 50-year old claimant with no skills and limited education is disabled, while a 49-year old claimant with the same characteristics is not disabled. Compare 20 C.F.R. part 404, subpart P, Appendix 2 § 201.09 with id. at § 201.18. See, e.g., Cummins v. Schweiker, 670 F.2d 81, 83 (7th Cir. 1982).
 
 
 32
 This adaptability or adjustment factor is not open to individual determination under the grids. Instead the grids conclusively determine that a person 49 years of age is able to adjust to a new unskilled sedentary occupation but that a person 50 years old is not.[8] In this respect the Secretary has exceeded the authority conferred by the statute because the regulations determine an adjudicative fact.[9] As the Secretary treats this factor, a person's ability to adapt or adjust is clearly a fact relating to the individual claimant and not one relating to the national labor market:
 
 
 33
 Where age is critical to a decision, recognition is taken of increasing physiological deterioration of the senses, joints, eye-hand coordination, reflexes, thinking processes, etc., which diminish a severely impaired person's aptitude for new learning and adaption to new jobs.
 
 43 Fed.Reg. 55349, 55359 (1978).[10]
 
 34
 The Secretary proffers this justification for the mechanical treatment given the age-adaptability factor in the grid regulations:
 
 
 35
 (T)here are no conclusive data which relate varying specific chronological ages to specific physiologically-based vocational limitations for performing jobs; this was a pioneering effort by SSA due to the unique nature of its disability program.
 
 
 36
 Id. at 55359.[11] The lack of precision in the adaptability factor does not, however, justify a legislative approach to its resolution. Instead, the very fact that there are no scientific data sources on which to make the conclusions that the regulations draw underscores that the best source of information for determining the effect of age on adaptability is the individual claimant.
 
 
 37
 To recapitulate, the Secretary has interpreted the Act to require a consideration of the effect of age on the ability to adapt to a new job. This is decidedly an adjudicative factor and therefore must be given individual consideration through adjudication rather than legislative resolution through rulemaking. Because the ALJ applied the grid regulations in these cases to determine conclusively these claimants' abilities to adapt to new work, the cases must be remanded for an individual consideration of this factor. See 42 U.S.C. § 405(g) (providing for remand to the agency upon showing of good cause); Ferguson v. Schweiker, 641 F.2d 243, 246 n.3, 250 n.8 (5th Cir. 1981) (same).
 
 
 38
 We do not decide at this stage how individual consideration of the age- adjustment factor must be accomplished. We observe, however, that two mechanisms exist under the regulations as written that would meet the requirements of the Act. As discussed above, the grid regulations do not apply if a claimant is unable to perform a full range of work at a given residual functional capacity. For instance, although manual dexterity is not a listed criterion for determining that a claimant is capable of sedentary work, if an applicant's dexterity is restricted to the extent that he cannot perform a full range of sedentary work, then the sedentary grid does not apply and the case is decided under general guidelines. 20 C.F.R. part 404, subpart P, Appendix 2 § 200.01(h). An applicant's inability to adapt to new work environments might also limit his ability to perform a full range of work. Second, if an applicant has a nonexertional impairment that significantly limits basic work skills, then the grids are inapplicable. The Secretary intends the category of nonexertional impairments to be flexible: "This particular area does not lend itself to a great degree of specificity." 43 Fed.Reg., supra, at 55359. Therefore, we perceive no reason why the age factor could not be evaluated as a nonexertional impairment as well. If the effect of age on the ability to adapt is considered through either of these two routes-full range of work or nonexertional impairment-then the individual determination that is required of this adjudicative factor is supplied despite the apparent flaw in the regulations. We emphasize these two mechanisms because they presently exist in the regulations and therefore enable us to uphold the regulations as written if applied in this fashion. We do not intend to hold that this is the only manner in which the age-adjustment factor may be dealt with by the agency. Cf., e.g., note 8 supra.
 
 
 39
 C. Substantial evidence and administrative notice
 
 
 40
 Having determined that the regulations if properly applied are within the Secretary's rulemaking powers conferred by the Act and do not contravene claimants' rights to a hearing, we turn to the contentions that the regulations cannot serve as substantial evidence to discharge the Secretary's burden of proving a claimant is capable of other substantial gainful activity, and that the regulations improperly take administrative notice of facts without an opportunity to rebut.
 
 
 41
 (1) Substantial evidence
 
 
 42
 We find claimants' argument unconvincing.[12] The flaw in the contention that the regulations cannot discharge the agency's evidentiary burden at the hearing is that the regulations are not a source of evidence for the ALJ's determination of disability but quite differently create a rule of agency law directing the ALJ's ultimate conclusion. The proper characterization of the regulations undermines claimants' contention in two ways. First, the regulations remove from adjudication the ultimate issue of ability to perform new work. Therefore, they do not purport to be, and need not be, a source of evidence on this matter, because the matter is not subject to adjudication. The only issue then is whether it is within the Secretary's power to remove this issue from adjudication, and that question has been answered above largely in the affirmative. Second, where the Secretary exercises rulemaking authority, the standard of review is no longer one of substantial evidence but instead whether the regulations are valid and properly applied.The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... because of failure of the claimant ... to submit proof in conformity with any regulation ..., the court shall review only the question of conformity with such regulations and the validity of such regulations.
 
 
 43
 42 U.S.C. § 405(g).
 
 
 44
 For those subsidiary factual issues that do remain for adjudication-residual functional capacity, age, education, and work experience-the regulations do not alter the burden of proof or the evidentiary standard. Watkins v. Schweiker, 667 F.2d 954, 955 (11th Cir. 1982).
 
 
 45
 (2) Administrative notice
 
 
 46
 The Administrative Procedure Act requires that when "an agency's decision rests on official notice of a material fact ..., a party is entitled, on timely request, to an opportunity to show the contrary." 5 U.S.C. § 556(e). Claimants reason that the regulations contravene this provision because they take administrative notice of the existence of a substantial number of unskilled jobs in the national economy and the requirements for those jobs, without affording an opportunity to rebut.[13] If this characterization of the regulations is followed, claimants have an easy case indeed, for the notice taken in the regulations is in fact conclusive. This is surely too facile, however. Section 556(e) applies only to adjudications, not to rulemakings.[14] Administrative notice of the existence of unskilled jobs and their requirements was not taken in any of these claimants' cases but was taken at the rulemaking where these regulations were promulgated.
 
 
 47
 Claimants' argument is strengthened by contending that when the regulations, which are based on administrative notice, are applied in an adjudicatory context to direct the ALJ's ultimate determination, then the "agency's decision rests on official notice." We find this not convincing. It is merely a convenient manner of expressing the effect of the regulations to say that they direct the ALJ's determination.[15] It is more precise and accurate, however, to observe that when the regulations are applied the ALJ does not determine disability. The ultimate issue is removed from adjudication. Only the subsidiary facts upon which the regulation operates are decided or determined through the adjudicatory process. Therefore, the determinations actually made at the hearing are not based on administrative notice, and § 556(e) is thus not applicable.
 
 
 48
 To illustrate the fallacy of claimants' argument, we observe that it could be made against any regulation that is applied in an adjudicatory context, for every rulemaking is based on notice of legislative facts that inform the rule that is promulgated. For instance, the Act expressly empowers the Secretary to define by rule "when ... earnings ... demonstrate an individual's ability to engage in substantial gainful activity," 42 U.S.C. § 423(d)(4), and accordingly regulations provide that earnings over $300 per month ordinarily show substantial gainful activity, 20 C.F.R. § 404.1575(b)(2)(vi). Such regulations are based in part on administrative notice of the prevalent wage rates. Under the profferred interpretation of § 556(e), if an ALJ invoked this rule to deny benefits the regulation would be invalid despite the Secretary's clear power under the Act. To state this proposition is enough to demonstrate that this is not the fashion in which § 556(e) is meant to apply. Instead, if the Secretary is empowered by the Act to remove an issue from litigation by determining it conclusively in rulemaking, § 556(e) is inapplicable because the administrative notice taken is not taken during adjudication.
 
 III. The individual cases
 
 49
 We have held that all of these cases must be remanded to the agency for an individual consideration of the age-adjustment factor because the regulations as heretofore applied conclusively determine this adjudicative matter. We decide now whether there were other defects in the particular cases, aside from the validity of the regulations, that require reconsideration on remand. There are two matters to address. First, some claimants contend that application of the regulations to them was not predicated upon proper findings by the ALJ. Second, claimants contend that decision of their cases under the regulations was procedurally unfair because there was no notice of the ALJ's intention to rely on the grids, and therefore there was no proper opportunity to offer rebuttal evidence showing that the claimant cannot perform a full range of work.
 
 A. Predicate findings
 
 50
 Claimant Holmes, age 32 at the time of the agency hearing, suffered a back injury in 1976 that precluded him from continuing his former work at a paper mill. After his second application for disability benefits Holmes was adjudged disabled for a time but was determined in 1977 to have regained the ability to perform substantial gainful employment. This determination was made on the basis of a physician's report that, after treatment, there was no reason Holmes could not resume some substantial work. No appeal was taken from this determination. Subsequently, Holmes was twice hospitalized and was seen by several other doctors because of back problems. He continues to suffer pain, he complains of vision problems and numbness, he undergoes four hours of traction per day, and he takes three drugs that potentially affect his mental acuteness.
 
 
 51
 In the hearing held in this third application for benefits, the ALJ found, based on the 1977 doctor's report saying that Holmes could return to work and the adjudication the same year that he was not disabled, that Holmes was capable of sedentary work. His age, experience (unskilled), and education (illiterate)[16] resulted in a not disabled determination under the grids. 20 C.F.R. part 404, subpart P, App. 2 § 201.23.
 
 
 52
 The district court reversed and remanded, holding that the need for four hours of traction and the mental effects of the medication were nonexertional impairments, and therefore Holmes' case falls outside of the grid. We cannot agree fully. Although it is clear from the record that these matters potentially impose limitations on Holmes' ability to perform sedentary work, we cannot say with certainty that they rise to the level of nonexertional impairments or prevent a full range of sedentary work. No findings were made on these matters by the ALJ, so Holmes' case must be remanded. See Harrell v. Harris, 610 F.2d 355 (5th Cir. 1980) (finding inadequate consideration by ALJ of need for therapy and the effects of medication). Because there is no evidence or findings on how these potential limitations in fact limit Holmes' work skills, however, we do not hold that the ALJ must decide the case outside the grid system; instead, the question of whether the grids apply must be reconsidered. See Ferguson v. Schweiker, 641 F.2d 243, 250 n.8 (5th Cir. 1981) (case should be remanded for agency consideration where record does not support "a dispositive ruling" ).
 
 
 53
 Holmes also complains that inadequate attention was given by the ALJ to his allegations of pain and to his post-1977 hospitalizations and physicians' reports. Although we need not decide whether these defects alone would warrant reconsideration of the case, we agree that the ALJ's treatment of these matters was abbreviated, and, inasmuch as this case must be substantially reconsidered on other grounds, on remand the ALJ should make a fresh determination of the extent of Holmes' current impairments and whether he meets the exertional requirements for sedentary work.
 
 
 54
 Claimant Jones, a former telephone installer and line repairman with a tenth grade education, age 52 at the time of his hearing, was found capable of light work and thus not disabled under § 202.11 of the grid regulations. Jones complains of back problems that cause pain and of a sinus condition and arthritis. He challenges the finding by the ALJ that he is capable of light work.
 
 
 55
 Jones' personal physician reported that Jones is totally disabled. Recent examinations by two other physicians, however, report that despite Jones' difficulties he is capable of light work as defined in the regulations. The ALJ was allowed to resolve this conflict in the medical evidence. Jones also contends that the ALJ did not consider his allegations of pain. Examination of the record discloses that pain was considered but discounted in the light of physicians' examinations. In particular, the fact that Jones' "responses on physical examination were very much anticipatory and somewhat exaggerated," in the words of the ALJ, supports the ALJ's decision to discount Jones' allegations of pain.
 
 
 56
 Claimants Soesbe, Broz, and Little have not challenged in their briefs to this court or to the district court any of the agency's findings on matters predicate to application of the grid regulations.[17]
 
 B. Procedure
 
 57
 Claimants contend that, if the regulations are valid, they should be given notice that their cases will be determined under the regulations so that they may develop the facts necessary to rebut application. We perceive no need for special notice of these regulations. The regulations, as published in the Code of Federal Regulations, fully explain the requirements for their application and that a disability case will be decided under them where appropriate. They require no more notice than other regulations governing the disability determination.
 
 
 58
 We emphasize though that there is a "basic obligation" on the ALJ in these nonadversarial proceedings to develop a full and fair record, which obligation rises to a " 'special duty ... to scrupulously and conscientiously explore for all the relevant facts' " where an unrepresented claimant has not waived counsel. This duty of inquiry on the ALJ would include, in a case decided under the grids, a duty to inquire into possible nonexertional impairments and into exertional limitations that prevent a full range of work. Claimants Holmes' and Jones' contentions concerning the ALJ's consideration of their cases have been addressed, and no other claimant contends that the ALJ's consideration was not full and fair.
 
 
 59
 The judgments of the district court are AFFIRMED in part and VACATED in part, and these cases are REMANDED with instructions to remand to the agency for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Honorable Gilbert S. Merritt, U. S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 We are the fourth circuit to consider a broad challenge to the facial validity of the grid regulations. Three prior circuits have upheld the regulations under varying attacks. Santise v. Schweiker, --- F.2d ---- (3d Cir. 1982); Cummins v. Schweiker, 670 F.2d 81 (7th Cir. 1982); Kirk v. Secretary, 667 F.2d 524 (6th Cir. 1981). See notes 5 & 9 infra
 The Second Circuit and the Fifth Circuit have considered the validity of the regulations under a more limited attack. Campbell v. Secretary, 665 F.2d 48 (2d Cir. 1981) (remanding case for identification of specific jobs available to claimants); Salinas v. Schweiker, 662 F.2d 345 (5th Cir. 1981) (holding that existence of jobs in the economy is a proper subject for administrative notice). See notes 12 & 13, infra.
 
 
 [2]
 43 Fed.Reg. 55349 et seq. (1978), effective Feb. 26, 1979. The regulations were recently revised to simplify their language. 45 Fed.Reg. 55584 (1980). As no changes material to this discussion were made, citations are to the current version
 
 
 [3]
 " 'Work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). It does not matter "whether such work exists in the immediate area in which (the applicant) lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Id. Thus, the only issue is what jobs exist in the national economy that the applicant could perform, not whether he could actually obtain those jobs considering the labor market or employer hiring practices
 
 
 [4]
 This paraphrases the definition of "impairment" in 20 C.F.R. § 404.1520(c)
 
 
 [5]
 We cite these cases for their support of the legislative/adjudicative fact distinction. As seen below, we do not agree with the conclusion reached by the Seventh Circuit that the disability determination is entirely a matter of legislative fact, or with the conclusion of the Third and Sixth Circuits that the regulations leave for individual determination all of a claimant's individual characteristics. See note 9 infra
 
 
 [6]
 Cf. Sullivan v. Weinberger, 493 F.2d 855, 859 (5th Cir. 1974): "Congress delegated to the Secretary the responsibility for prescribing regulations concerning the determination of what showing is sufficient to prove that the claimant's alleged impairment is a disability under the Act.... This is an area where administrative expertise should be accorded great weight."
 
 
 [7]
 " 'Age' refers to how old you are ... and the extent to which your age affects your ability to adapt to a new work situation and to do work in competition with others."
 We do not hold that this is the only interpretation that may be given to the age factor. The agency interprets it this way and no one challenges it, so we proceed under this interpretation. We must confess some confusion concerning this adaptability factor, though. The agency considers that the inability to adapt to a new work environment can be offset or mitigated by job skills or education. But one would think that a person unable to adjust to an unskilled job could also not adjust to a skilled job.
 
 
 [8]
 Contrast the treatment given the age categories with that given the education categories:
 Adjudicative weight is ascribed to formal education only to the extent that such education contributes to the individual's ability to meet the vocational requirements of jobs; e.g., reasoning ability, communications skills or language competence, arithmetical ability .... Thus the judgment must be an individualized one and pertain to the facts presented about the claimant being evaluated. Grade level is only determinative in the absence of evidence to the contrary.
 
 
 [43]
 Fed.Reg. 9284, 9299 (1978)
 
 
 [9]
 This is the juncture where we depart from the opinions of other circuits. The Third Circuit has held that the regulations require "complete consideration of all of an applicant's relevant characteristics." Santise, --- F.2d at ----. The Seventh Circuit evidently views the disability determination to consist entirely of legislative facts. See note 5 supra and accompanying text. The Sixth Circuit has held that the "grid requires that a claimant's particular characteristics be evaluated before a disability determination is reached." Kirk, 667 F.2d at 530
 
 
 [10]
 Indeed, where the grid regulations are not applicable and disability is determined on the basis of the general guidelines in 20 C.F.R. § 404.1525 et seq., the Secretary has recognized the need for a more case-by-case determination than is made in the grids: "(W)e will not apply these age categories mechanically in a borderline situation." Accord 43 Fed.Reg. 55349, 55354 (1978) ("the point when age could be expected to be an adverse consideration in determining an individual's vocational adaptability to (new) work ... is an expectancy only and not an arbitrary limit" )
 
 
 [11]
 See also, Goldhammer, The Effect of the New Vocational Regulations on Social Security and Supplemental Security Income Disability Claims, 32 Admin.L.Rev. 501, 508 (1980):
 Now, this question of adaptability of older workers to new jobs was raised from time to time at hearings taking place before the new vocational regulations took effect. The typical response of vocational expert witnesses was that while older workers are generally less adaptable to change than younger workers, it is virtually impossible to apply that generalization to specific situations.
 
 
 [12]
 The Second Circuit differs with this result, holding that the regulations fail to provide notice of particular jobs that a claimant is capable of performing. Campbell v. Secretary, 665 F.2d 48, 53-54 (2d Cir. 1981). This requirement of identification of specific jobs does not hold in this circuit, however, where the claimant has first been found capable of a full range of work in a given residual functional capacity. Ferguson v. Schweiker, 641 F.2d 243, 247-48 (5th Cir. 1981). Moreover, as discussed immediately following in text, we do not agree with the implicit premise of the Second Circuit that the Secretary's regulations must comply with the caselaw prescribing the Secretary's evidentiary burden at an adjudication
 
 
 [13]
 Compare Salinas v. Schweiker, 662 F.2d 345 (5th Cir. 1981). There the court held that it was proper to take administrative notice of the existence in the economy of jobs that a person with the claimant's qualifications can perform and that vocational expert testimony is not necessary once the claimant's individual vocational characteristics have been considered. This issue of the use of administrative notice instead of vocational testimony differs from the administrative notice issue we face in that in Salinas the issue was a substantive one of whether jobs in the economy is a proper subject for administrative notice whereas here the primary issue is a procedural one of, assuming it is proper to take judicial notice, was proper notification and opportunity to rebut afforded
 
 
 [14]
 Appellees do not contend that the rulemaking in which the regulations were adopted was deficient in failing to provide an opportunity to respond
 
 
 [15]
 See, e.g., Salinas v. Schweiker, 662 F.2d 345, 347-49 (5th Cir. 1981)
 
 
 [16]
 Mr. Holmes was not actually adjudged illiterate but only presumed so by the ALJ because he claimed only a limited ability to read and write and it was not necessary under the grids to determine whether he was literate
 
 
 [17]
 Claimants Soesbe and Broz did allege at oral argument that it was not proper to apply the regulations in their cases. This is too late in the long history of these cases to raise these contentions. See Nathan Rodgers Construction Co. v. City of Saraland, 676 F.2d 162 (5th Cir. 1982) (on petition for rehearing)