Herbert E. PRILL, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 80 C 4824.

United States District Court, N. D. Illinois, E. D.

Sept. 21, 1982.

Joseph P. Cascino, Jr., Glenview, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on the plaintiff's objections to the magistrate's report and recommendation. For the reasons set forth below, the court adopts the magistrate's report and recommendation and denies both the plaintiff's and defendant's motions for summary judgment and remands this case for a complete development of the record and the taking of additional evidence.

I

The plaintiff Herbert E. Prill ("Prill") filed suit against Richard S. Schweiker, the

Secretary of the United States Department of Health and Human Services ("the Secretary") seeking review under 42 U.S.C. § 405(g) of a final decision by the Secretary which denied Prill entitlement to a disability period and disability insurance benefits. Prill and the Secretary filed cross-motions for summary judgment. The court referred the matter to a magistrate for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[1]

In her report and recommendation, the magistrate concluded that substantial evidence does not exist in the administrative record to support the Secretary's denial of the disability benefits. She recommended that the case be remanded to the administrative law judge ("ALJ") for a complete development of the record and the taking of additional evidence. The Secretary filed objections to the magistrate's report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). In his objections, the Secretary contends that the evidence presented at the administrative hearing clearly establishes that Prill is not entitled to the benefits. Since objections have been filed, the court is required to make a *de novo* determination of the magistrate's report pursuant to 28 U.S.C. § 636(b)(1)(C).[2]

Prill seeks judicial review under 42 U.S.C. § 405(g) of a final decision by the Secretary which denied Prill's application for a period of disability and disability benefits under the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i)(1), 423, 1382. Prill filed an application for a period of disability and disability insurance benefits on May 25, 1979 in which he claimed that he became unable to work on May 24, 1979 at age fifty-seven because of lung and blood problems and epilepsy. (Administrative Record ("R.") at 62–65). The claim was denied initially and upon reconsideration by the Social Security Administration on September 4, 1979 and October 26, 1979, respectively. (R. 66–69). On December 27, 1979, Prill requested a hearing before an ALJ. (R. 21).

A hearing was held before an ALJ on March 11, 1980 to review the case *de novo*. Prill appeared with his attorney. In addition, the ALJ received testimony from Prill's wife, Sarah Prill, and Prill's daughter, Kathryn V. Gonzalez. The decision rendered by the ALJ on April 9, 1980 found that Prill was not under a disability and it denied his claim for benefits. (R. 12–13). Prill then requested and received a review of the ALJ's decision by the Appeals Council. The Council affirmed the ALJ's decision on July 9, 1980. (R. 3). Seeking judicial review of the administrative decision, Prill filed his complaint with this court on September 10, 1980.

It is uncontradicted that Prill suffered from epilepsy. The earliest diagnosis of his epilepsy was made in September 1974 upon the hospitalization of Prill for two episodes of unconsciousness which lasted several

---

1. Section 636(b)(1)(B) provides:

    [A] judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

    28 U.S.C. § 636(b)(1)(B).

2. Section 636(b)(1)(C) provides:

    [T]he magistrate shall file his proposed findings and recommendations under [section 636(b)(1)(B) ] with the court and a copy shall forthwith be mailed to all parties.

    Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

    28 U.S.C. § 636(b)(1)(C).

minutes each. (R. 117). An electroencephalogram ("EEG") administered to Prill in the hospital revealed "possible anterior temple spikes". (R. 121). The final diagnosis for Prill at that time was of "possible seizure disorder" for which Dilantin was prescribed. (R. 117). Following bouts of dizziness and fainting in October 1975, Prill was admitted to a hospital where he underwent another EEG. The result was abnormal, showing sharp waves on both temporal areas. (R. 156). Prill's personal physician, Dr. Borzsony, prescribed Dilantin for him between 1975 and 1979 for his possible epileptic condition. (R. 37). In February 1979 Prill re-entered the hospital with a history of coughing for several months. (R. 165). Hospital records showed Prill's epilepsy as "under control". He was in the hospital again in April 1979 after being involved in an automobile accident in which he suffered a cerebral concussion and nasal contusion, however no test for epilepsy was performed. (R. 111–113). On the advice of his doctor, Prill quit his job with Town Carpet Company in May 1979. At this time, he was fifty-seven years old, had a high school education and had nineteen years of work experience as a carpet, linoleum and tile installer. (R. 5–7).

In July 1979 after Prill filed his disability application, he was examined by Dr. Borzsony and later by a physician appointed by the Disability and Determination Services, Dr. Levine. (R. 99). Dr. Borzsony filed a report on July 7, 1979 in support of Prill's disability application that stated that plaintiff was being treated for epilepsy with high doses of Dilantin and sedatives and that the epilepsy "seems to be under control". (R. 93). The doctor added that Prill is subject to occasional epileptic seizures which would jeopardize his own and other's safety if experienced while driving or working. (R. 93). Dr. Borzsony reported that Prill suffers from emphysema which is aggravated by Prill's smoking and working conditions. (R. 93). Dr. Levine's report is based on an examination of Prill made on July 26, 1979. Based on the medical history and Prill's own statement, Dr. Levine reported that Prill has epilepsy, but it is quite well controlled by medication. (R. 101). No EEG was performed at this time. Dr. Levine also declared that Prill's "emphysema is very mild, presented no real handicap," and Prill would be better off if he quit smoking. (R. 101).

A vocational assessment was made based on Prill's application and Dr. Levine's report and it noted that Prill's epilepsy was under control and that his emphysema was mild. The assessment stated that the only problem presented by Prill's carpet laying job was the dust, chemicals, and contaminated air. (R. 102). The assessment recommended that Prill's skills were transferable to the job of "carpet-cutter" where the work environment is without excessive dust and fumes. (R. 102).

On October 24, 1979, Dr. Borzsony reported by telephone to an adjudicator for the Disability Determination Services that Prill's seizures were under control with medication. (R. 103). Yet on December 1, 1979, Dr. Borzsony wrote a letter to the Disability Determination Services which referred to the October 24, 1979 telephone conversation and stated that Prill's epilepsy was in guarded condition then, and since that time Prill experienced several spells despite an increase in medication. (R. 104). Dr. Borzsony felt it would be irresponsible for Prill to drive a car or to work when he could cause injury to himself or other people. (R. 104). On January 31, 1980, Dr. Borzsony repeated this diagnosis in a letter. (R. 107).

At the hearing before the ALJ, Prill testified that he experiences blackout spells approximately once per week, but he is unsure of the frequency and duration of such spells because he can not recollect what has occurred when he regains consciousness. (R. 34). Prill testified that he had several near-accidents in his car which were witnessed by his wife and his work supervisor. (R. 48–49). Prill's wife testified that Prill experienced blackouts ap-

proximately once a month (R. 57), and that he had several accidents or near-accidents while driving his car. (R. 54–56). Prill's wife added that Prill has increased the number of hours he sleeps per day, has become increasingly nervous and difficult to get along with, and has experienced episodes of incontinence at night on a weekly basis. (R. 54–57). Prill's daughter testified before the ALJ that she had witnessed one of Prill's seizures. (R. 59). The ALJ admitted into evidence a written statement from Prill's supervisor which disclosed that he had witnessed at least six or seven of Prill's spells and that the spells occurred more frequently as time progressed. (R. 173–174).

After considering all the evidence, the ALJ concluded that none of Prill's impairments have reached a level of severity which would permit a finding of disability based solely on medical considerations. (R. 11). The ALJ made the following findings: 1) Prill met the special earnings requirements for Title II disability insurance benefits on the alleged date of disability onset and continues to meet said requirements through at least April 9, 1980; 2) Prill has epilepsy and chronic obstructive pulmonary disease; 3) Prill is unable to return to his prior work; 4) Prill has a maximum sustained capacity for medium work; 5) Prill is of advanced age; 6) Prill has a high school education; 7) Prill has a vocational background in skilled work but there is no evidence his skills are transferable; 8) considering Prill's age, education, work experience, maximum sustained work capacity, his nonexertional limitations and using Rule 203.15 of 20 CFR § 404.1513 as a guide, there are jobs existing in the national economy which he can perform, and he is found "not disabled"; and 9) Prill was not under a disability as defined in the Act, as amended, at any time through April 9, 1980. (R. 12–13). In determining that Prill was not disabled, the ALJ used the sequential evaluation method detailed in 20 C.F.R. § 404.-1503 (now 20 C.F.R. § 404.1520 (1982)). (R. 11). The ALJ additionally determined that neither Prill's epilepsy nor his chronic obstructive pulmonary disease meet the level of severity required by 20 C.F.R. Part 404, Subpart P, App. 1, §§ 11.02 and 11.03.

In her report and recommendation, the magistrate summarized the evidence and concluded that the ALJ failed to state the evidence on which he based his conclusion that Prill's impairment did not meet the level of severity required by 20 C.F.R. Part 404, Subpart P, App. 1, §§ 11.02 or 11.03. (Magistrate's Report ("M.R.") at 7). Furthermore, the magistrate stated that the ALJ improperly relied on the medical-vocational guidelines set out in 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200 *et seq.* to find that Prill is able to perform "medium work on a sustained basis". (M.R. 11). The magistrate noted that the ALJ's findings of Prill's limitations implied intermittent work capacity rather than sustained capacity. (M.R. 11). It appeared to the magistrate that no weight was accorded the December 1, 1979 and January 31, 1980 statements of Prill's treating physician, Dr. Borzsony, in determining the severity of Prill's impairment. (R. 8). Finally, the magistrate stated that the ALJ erred in failing to expressly consider Prill's subjective complaints to which he and his wife testified regarding Prill's increased number of hours of sleep per day, his daily feelings of whoosiness, his increased irritability, and his nighttime incontinence. (R. 12).

In his objections to the report and recommendation of the magistrate, the Secretary argues that a remand is not warranted, since the ALJ fully assessed the severity of Prill's impairments. (Defendant's Objections to the Magistrate's Report ("D.O.") at 1). The Secretary points to the medical evidence and Prill's ability to mow the lawn, shovel snow and engage in home carpentry work as proof of Prill's non-disability and functional capacity. (D.O. 1). In addition, the Secretary notes that failure of an ALJ to refer to portions of plaintiff's testimony is an implicit discrediting of a plaintiff's complaint. (D.O. 2). In reply to

the magistrate's observation that the ALJ's findings concerning the limitations of Prill's functional capacity due to epilepsy implied intermittent rather than sustained work capacity, the Secretary states that it is not the burden of the Secretary to establish a continuous period of "non-disability". (D.O. 2). The Secretary maintains that the ALJ correctly relied on the medical-vocational guidelines to determine whether Prill could work in a substantial gainful activity and that Prill did not meet his burden of proving that his nonexertional impairments preclude the performance of a substantial gainful activity. (D.O. 2–3). In conclusion, the Secretary argues that substantial evidence supports the ALJ's findings of fact as to Prill's residual capacity to perform medium work activities that are not dangerous and are undertaken in a "clean" environment. (D.O. 4).

## II

A district court's review of a decision by the Secretary in a disability benefits case is limited to a determination of whether substantial evidence is present in the administrative record as a whole to support the Secretary's decision. *Johnson v. Weinberger,* 525 F.2d 403, 406–07 (7th Cir. 1975). The district court cannot make its own appraisal of the evidence. *Id.* at 406–407. "Substantial evidence" is defined as "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Allen v. Weinberger,* 552 F.2d 781, 784 (7th Cir. 1977), *quoting Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). If there is a conflict in the evidence, the burden is upon the claimant to prove that he or she meets the requirements of eligibility. *Johnson v. Weinberger,* 525 F.2d at 407. In addition, an ALJ's credibility determination regarding subjective evidence should be given considerable weight by the court. *Bibbs v. Secretary of Health, Education & Welfare,* 626 F.2d 526, 528 (7th Cir. 1980).

In order to qualify for a period of disability and disability insurance benefits under the Act, an individual must meet the insured status requirements under the Act, be under the age of sixty-five, file an application for disability insurance benefits and a period of disability, and be under a disability as defined in the Act.[3] 42 U.S.C. §§ 416(i), 423; *Griffin v. Weinberger,* 407 F.Supp. 1388, 1392 (N.D.Ill.1975), *aff'd,* 539 F.2d 712 (7th Cir. 1976). The determination of a disability which entitles a claimant to benefits under the Act is a two-step process: (1) there must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

---

**3.** The term "disability" is defined under 42 U.S.C. § 423(d)(1)(A) as:

[an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

For purposes of [section 423(d)(1)(A)]:

[A]n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or wheth-

er he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

[A] "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

An individual shall not be considered to be under a disability unless he furnished such medical and other evidence of the existence thereof as the Secretary may require.

42 U.S.C. § 423(d)(1), (2), (3) & (5).

months[4] and (2) there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano,* 614 F.2d 142, 143 (7th Cir. 1980); *Lieberman v. Califano,* 592 F.2d 986, 989 (7th Cir. 1979); 42 U.S.C. 423(d)(1)(A). The district court must consider four elements of proof in determining whether a claimant is disabled under the Act: (1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and as observed by others; and (4) the claimant's age, education, and work history. *Johnson v. Weinberger,* 525 F.2d at 407.

### III

■ For several reasons, this court finds that the ALJ erred in reaching his conclusion that Prill was not disabled and could perform "medium work on a sustained basis". First, the ALJ failed to support by substantial evidence his finding that the level of severity of Prill's impairment was not great enough to be deemed disabling. Second, the ALJ should have expressly considered the December 1979 and January 1980 statements of Prill's treating physician. Third, the ALJ applied an improper legal standard to show that Prill is able to perform a form of substantial gainful employment other than his previous work. Fourth, the ALJ failed to expressly consider Prill's subjective complaints to which he and his wife testified. Finally, the ALJ came to an inconsistent finding of fact when he determined that Prill's seizure disorder is controlled by medication.

■ With respect to the first reason, the court is in agreement with those portions of the magistrate's report which find that the ALJ failed to state upon what evidence he based his conclusion that Prill's physical or mental impairments are not disabling. The severity of an impairment is judged by 20 C.F.R. Part 404, Subpart P, App. 1 (1982). The ALJ applied §§ 11.02 and 11.03 of that regulation to determine the severity of Prill's neurological problems. Yet despite his acknowledgement that Prill has a longstanding seizure disorder, is subject to seizures occurring weekly or greater, and takes Dilantin and phenobarbital for his illness, the ALJ ruled that the level of severity for a finding of "disabled" was not met. The conclusion of the ALJ is not supported by substantial evidence.

■ The court also concurs with the magistrate's observation that apparently no weight was accorded certain statements of Prill's treating physician in determining the severity of Prill's impairment. A claimant's physical or mental impairment must be "shown by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1508, 404.1526(b) (1982); *Lieberman v. Califano,* 592 F.2d 986 at 989. The weight to be given a physician's statement on a claimant's disability is determined by the support of medical and clinical findings. *Sykes v. Finch,* 443 F.2d 192, 194 (7th Cir. 1971); *Allen v. Weinberger,* 552 F.2d at 785. It is possible that a claimant's personal physician might "lean over backward" to support the application for disability benefits; therefore the fact that he has greater knowledge of the claimant's medical condition is not entitled to controlling weight. *Cummins v. Schweiker,* 670 F.2d 81, 84 (7th Cir. 1982); *Carter v. Schweiker,* 535 F.Supp. 195, 204 (S.D.Ill.1982). However, the opinion of an

---

**4.** The fact that seizures, blackouts, dizziness or other symptoms are "episodic" does not preclude a finding of disability within the meaning of the Act. Under the "continuous period" language of § 423(d)(1)(A) a claimant is not required to demonstrate "an inability to engage in any substantial gainful activity every day of his life." *Gronbeck v. Schweiker,* 534 F.Supp.

642, 645 (D.S.D.1982); *Totten v. Califano,* 624 F.2d 10, 11 (4th Cir. 1980). Courts have found claimants disabled under the Act when they experienced blackouts, dizziness and seizures. *Gronbeck v. Schweiker,* 534 F.Supp. at 646; *Davis v. Califano,* 605 F.2d 1067, 1069 (8th Cir. 1979).

examining physician that the claimant is totally disabled, though phrased as an ultimate conclusion on the question presented to the Secretary, is at least entitled to consideration as an indication of how severe the patient's impairment was at the time of the examination. *Allen v. Weinberger,* 552 F.2d at 785. As in this case, where there is no dispute over the existence of a physical or mental impairment, such an opinion, standing alone, may establish total incapacity for substantial gainful activity within the meaning of 42 U.S.C. § 423; *Allen v. Weinberger,* 552 F.2d at 785–86. Even though Dr. Borzsony's evaluations of Prill's condition were not substantiated by clinical or medical reports, the ALJ should have considered Dr. Borzsony's statements of December 1979 and January 1980.[5] These statements indicate that Prill's epilepsy was no longer under control despite an increase in medication and that Prill should not be allowed to work for fear of injuring himself or others. Upon remand, the ALJ should expressly consider Dr. Borzsony's statements and take additional evidence on Prill's physical condition to establish the level of severity of his impairment.

■■■■ In addition, the magistrate correctly observed that the ALJ applied an improper legal standard to show that Prill could perform a form of substantial gainful employment other than his previous work. The mere presence of an impairment, without a showing that it prevents a claimant from engaging in a substantial gainful activity, does not constitute a disability as defined under the Act. *Skenandore v. Califano,* 473 F.Supp. 1362, 1363 (E.D.Wis.1979). Even where epilepsy renders a person disabled, the claimant's obligation to demonstrate that he is unable as a result to engage in any substantial gainful activity is not eliminated. *Figueroa v. Secretary of Health, Education & Welfare,* 585 F.2d 551 (1st Cir. 1978). Yet if a claimant establishes that his disability prevents him from returning to his prior employment, the claimant's burden of production is met and the burden shifts to the Secretary to show that there exists some other form of substantial gainful employment that the claimant can perform. *Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857, 861 (7th Cir. 1978); *Stark v. Weinberger,* 497 F.2d 1092, 1097, 1098 (7th Cir. 1974), *see also Cowart v. Schweiker,* 662 F.2d 731, 736 (11th Cir. 1981). To show some other form of employment, the Secretary may in some circumstances rely on the grid (or table) rules in 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200 *et seq.* (1982). Indeed, reliance on these medical-vocational guidelines to determine whether an individual who is disabled from doing his previous work can find other substantial gainful employment does not violate the statutory requirement that the Secretary's decision on a disability claim be based on substantial evidence. *Cummins v. Schweiker,* 670 F.2d at 83. However, the regulatory tables which purport to take administrative notice of the existence of jobs in the national economy do not apply in cases where the claimant alleges nonexertional kinds of impairments. *Cowart v. Schweiker,* 662 F.2d at 736. Nonexertional limitations include an illness such as epilepsy, *see* 20 C.F.R. § 404.1545(d) (1982)[6] and the need to avoid breathing certain fumes or dust. *See* 43 Fed.Reg. 55,349 and 55,358 (1978); *Roberts v. Schweiker,* 667 F.2d 1143, 1145 (4th Cir. 1981). Thus, for example, if an ALJ recognizes that a claimant should not work in a

---

5. A claimant may become disabled for purposes of the Act at a later date than originally claimed. Prill can prevail if he can show that he became disabled at any time up to the date of the Secretary's final decision, so long as he still satisfied the special earnings requirements of the Act at that time. 42 U.S.C. § 423(b), (c); *Bastien v. Califano,* 572 F.2d 908, 912 (2nd Cir. 1978).

6. This regulation (formerly 20 C.F.R. § 404.-1505(d)) was amended after the hearing before the ALJ. The amendment, designed to simplify and clarify, specifically indicates that epilepsy and environmental restrictions are considered impairments that do not limit physical exertion.

dust and fume-filled environment it is reversible error for him to mechanically apply the regulatory tables alone without recourse to other evidence in determining the capability of a claimant to perform alternative work available in the national economy. *Roberts v. Schweiker,* 667 F.2d at 1145.

■ Applying these principles to this case, the ALJ did not rely on the appropriate standard to determine that Prill is able to perform other work. The ALJ acknowledged Prill's epilepsy and chronic obstructive pulmonary disease and he found that Prill could no longer perform his previous work as a carpet installer. Thus, the burden shifted to the Secretary to show that Prill could perform some other type of substantial gainful employment. In reaching his conclusion that the Secretary had met his burden, the ALJ relied solely on the regulatory table in 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 3, § 203.00, Rule 203.15. Such reliance was error because both of Prill's impairments, epilepsy and emphysema, are nonexertional. Since the use of the table was inappropriate, the issue of whether Prill can perform "medium work on a sustained basis" need not be addressed here and a remand is appropriate.[7]

■ The ALJ also erred in failing to expressly consider Prill's subjective complaints to which he and his wife testified. An ALJ can reject subjective complaints after weighing them against the other evidence in the record while keeping in mind

the interest and credibility of the witnesses. *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir. 1969); *Peterson v. Gardner,* 391 F.2d 208, 209 (2d Cir. 1968). However, it is error for an ALJ to fail to expressly consider such complaints, *DePaepe v. Richardson,* 464 F.2d 92, 99 (5th Cir. 1972); *Storck v. Weinberger,* 402 F.Supp. 603, 607 (D.Md. 1975), because subjective complaints alone may support a claim for disability benefits. *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971); *Gronbeck v. Schweiker,* 534 F.Supp. at 646. An explanation from the ALJ of the reason why probative evidence has been rejected is required so that the reviewing court can determine whether the reasons for rejection were improper. *Cotter v. Harris,* 642 F.2d 700, 706–707 (3rd Cir. 1981); *see also Gronbeck v. Schweiker,* 534 F.Supp. at 646 and *Reardon v. Weinberger,* 387 F.Supp. 1210, 1212 (E.D.Pa.1975). In this case, since the ALJ did not mention Prill's increased number of hours of sleep per day, his daily feelings of whooziness, his increased irritability, or his nighttime incontinence, the court cannot make such a determination.

■ Finally, although the magistrate in her report and recommendation did not refer to it, this court finds an inconsistent finding of fact in the ALJ's holding. Prill's treating physician stated that Prill had been given high doses of Dilantin and sedatives for his epileptic condition. (R. 93). His medication was increased to the point where his doctor would not allow him a greater dosage. (R. 46).[8] The ALJ found

---

7. Upon remand, the ALJ must turn to other evidence in the record to show that Prill can perform substantial gainful employment other than his previous job. Where the record is devoid of such information on the claimant's ability to perform other jobs which exist in the national economy, a vocational expert's testimony is advisable. *Orzel v. Finch,* 445 F.2d 150, 154 (7th Cir. 1971). A vocational assessment in the record considers Prill's emphysema and notes that Prill's epilepsy is under control through medication. (R. 102). The ALJ should consider submitting to a vocational expert any new medical evidence produced for the re-hearing of this claim.

8. Upon remand, the ALJ should take additional evidence to determine if Prill's subjective complaints are affected by the amount of medication he takes. The regulations state that where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must also be assessed. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.00 (1982); *see Figueroa v. Secretary of Health, Education & Welfare,* 585 F.2d 551 at 553–54 (1st Cir.). The testimony of Prill and

Prill's condition to be "under fairly good control with Dilantin and phenobarbital," but on the other hand declared that the frequency of Prill's seizures is weekly or greater. (R. 11). These are inconsistent findings of fact which do not support the ALJ's conclusion that Prill's disorder is controlled by medication. *See Gronbeck v. Schweiker*, 534 F.Supp. at 645.

## IV

Section 405(g) of the Act expressly permits a reviewing district court to enter judgment upon "the pleadings and transcript of record" which entitles the court to utilize a summary judgment procedure. 42 U.S.C. § 405(g); *Milton v. Harris*, 616 F.2d 968, 975 (7th Cir. 1980) (per curiam). Summary judgment may be entered in a case "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Additionally, a reviewing court can for "good cause" remand a disability claim to the Secretary for the taking

of additional evidence. 42 U.S.C. § 405(g). Then, the Secretary may modify or affirm his findings of fact or his decision or both. 42 U.S.C. § 405(g). In this case, since the ALJ used an improper legal standard and did not fully develop or consider evidence in the record, the court concludes that summary judgment should be denied to both the Secretary and Prill.

Accordingly, the court adopts the magistrate's report and recommendation and remands the case to the Secretary for a complete development of the record and the taking of additional evidence.

It is so ordered.

---

the statements of his treating physician on the large dosage of medicine Prill takes each day

necessitates an inquiry by the ALJ into the possible side effects Prill might experience.