Donald ABBOTT, Jr., Plaintiff,

v.

Margaret HECKLER, Secretary of the Department of Health & Human Services, Defendant.

No. 84 C 5788.

United States District Court, N.D. Illinois, E.D.

May 29, 1985.

Dorie Budlow, Cook County Legal Assistance Foundation, Harvey, for plaintiff.

Anton R. Valukas, U.S. Atty. by Robert T. Grueneberg, Asst. U.S. Atty., Chicago, for defendant.

## ORDER

BUA, District Judge.

Before the Court are the parties' cross-motions for summary judgment in a Social Security disability benefits case. For the reasons stated herein, defendant's motion is granted and plaintiff's motion is denied.

## I. FACTS

Plaintiff is a 27-year-old man with two years of college education. His past relevant work was as an inspector and drill press operator. In July 1982, plaintiff was injured in a motorcycle accident, suffering multiple facial fractures, a closed head injury, cuts and abrasions. He was hospitalized over six weeks. As a result of his head injury plaintiff suffered from right side hemiparesis (muscle weakness) affecting both upper and lower right extremities. At the time of his discharge in August 1982, he was alert and coherent but still showed moderate muscle weakness in his right extremities. With physical therapy plaintiff became more proficient and by September his treating physician reported that he no longer needed a cane for walking although he continued to use one for self-confidence. The following January and again later in May 1983, the physician found that the plaintiff was "considerably improving" (R. 11) and that the only limitation of plaintiff's functional capacity was his poor ability to perform fine manipulation with his right hand. Plaintiff also complained of fatigue which the treating physician attributed to him "being out of shape."

However, based on the medical evidence and plaintiff's testimony, the ALJ concluded that plaintiff did, in fact, suffer from muscle weakness in the right upper extremity. But he found the plaintiff's testimony as to weakness in his right leg not credible and contrary to the medical evidence. Therefore, the ALJ concluded that plaintiff's capacity to walk and stand was unimpaired.

In summary, the ALJ found plaintiff to have a residual functional capacity for light work reduced by his inability to perform fine manipulation with his right hand and further reduced by his partial inability to perform handling with his right hand.

## II. APPLICABLE LAW

The Social Security Administration defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... lasting at least a year." The impairment "must be of such severity that [the applicant] is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area where he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(1)(A), (2)(A).

The Department of Health and Human Services has promulgated regulations to direct a finding of disabled or not disabled in cases where the claimant suffers solely from exertional impairments. These regulations are contained in the List of Impairments (20 C.F.R. Appendix 1) and the Medical-Vocational Guidelines. (20 C.F.R. Appendix 2). They mandate that a claimant whose impairment is listed in Appendix 1 shall be considered per se disabled. *Broz v. Schweiker*, 677 F.2d 1351 (11th Cir.1982). If a decision is not directed at that point, the ALJ will proceed to the Medical-Vocational Guidelines (the "Grid") to determine whether a finding of disability is directed.

The Grid takes four factors of work ability into consideration: first, the heaviest type of substantial gainful employment the claimant can do; second, his age; third, his education; and fourth, his previous work experience. The Grid will direct a finding of "disabled" or "not disabled" in certain cases when the claimant's four factors directly correspond to those in the Grid.

■ The Grid was meant to substitute an institutional judgment as to "disability" or "nondisability" for the *ad hoc* judgments of ALJs based on the testimony of vocational experts and other witnesses and on their own limited and variable knowledge of the national labor market. *Cummins v. Schweiker*, 670 F.2d 81 (7th Cir. 1982). However, the Grid does not encompass the characteristics of every conceivable claimant but rather describes what the agency has determined to be major vocational and medical functioning patterns. *Smith v. Schweiker*, 735 F.2d 267 (7th Cir. 1984). Because the Grid only contemplates exertional (strength) limitations, if nonexertional (postural or manipulative limitations) impairments are claimed, as in plaintiff's case, the regulations require the ALJ to look beyond the Grid to a case-by-case determination. Nevertheless, even when the claimant suffers from both types of impairments, the ALJ may consult the Grid as a framework for consideration of how much the individual's work capability is further diminished in terms of types of jobs that would be contraindicated by the additional nonexertional impairment. Section 200.-00(e) of Appendix 2 to Subpart P. 20 C.F.R. Part. 404.

■ In summation, when a claimant suffers from both exertional and nonexertional impairments, the Grid is not decisive on the question of "disability." However, the Grid may serve as a guideline for the ALJ to decide whether the claimant, under his peculiar circumstances, may engage in some other substantial gainful activity available in the national economy.

## III. DISCUSSION

■ A district court's review of a decision by the Secretary in a disability benefits case is limited to a determination of whether substantial evidence is present in the administrative record to support the Secretary's decision. *Prill v. Schweiker*, 546 F.Supp. 1381, 1387 (N.D.Ill.1982). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The district court cannot make its own appraisal of the evidence. *Johnson v. Weinberger*, 525 F.2d 403, 406 (7th Cir. 1975). Case law in the Seventh Circuit has held that an ALJ's credibility determination regarding subjective evidence should be given considerable weight by the Court. *Prill, supra.* In fact, the statute upon which this appeal is based also provides that "the findings of the Secretary as to any fact, if supported by substantial evidence shall be conclusive." 42 U.S.C. § 405(g).

■ The plaintiff raises two issues for review. The first is whether the ALJ's finding that plaintiff is capable of performing light work was supported by substantial evidence.

The ALJ's decision includes a detailed, well-considered summary of all the medical evidence in the record. In addition, the ALJ and the plaintiff's own attorney questioned him at the hearing regarding his physical capacity to perform various walking, standing, lifting, and grasping tasks. The plaintiff testified that he is unable to run because of weakness in his legs. However, the ALJ pointed out that the report of the treating physician noted that he was starting to run for exercise, and that his complaints of fatigue were due to his being out of condition.

The ALJ found the plaintiff's own testimony not credible regarding his right leg strength, a finding entitled to considerable weight. *Prill, supra.* However, the medical evidence submitted by the consulting physician revealed that muscle strength

tests showed mild motor weakness in the right upper and lower extremities, with strength in those extremities judged to be four out of a possible five. The treating physician also reported that the plaintiff's ability to perform fine manipulation with his right hand was poor.

On that basis, the ALJ concluded that plaintiff's walking and standing abilities are essentially unimpaired but that he does suffer from definite motor weakness in his right arm and hand. But the ALJ also pointed to the fact that the plaintiff's motor abilities on his left side are totally unimpaired. Therefore, the plaintiff was found to have a residual functional capacity for light work reduced by his inability to perform fine manipulation with his right hand and further reduced by his partial inability to perform handling with his right hand. This finding is supported by substantial evidence and the Court will not disturb it.

The second issue to which the plaintiff objects is the ALJ's determination that "some types of light work exist in the economy which plaintiff could perform with his reduced capacity for light work." Specifically, the plaintiff argues that the ALJ was required to solicit testimony from a vocational expert regarding the extent to which the plaintiff's occupational base for light work was limited by his nonexertional limitations.

When the claimant's precise capacity is not expressly provided for in the Medical-Vocational Guidelines ("Grid"), as in this case, the question of whether the particular claimant can perform jobs that exist in the national economy involves a determination of two different sorts of subsidiary facts. Each case requires both a broad assessment of the conditions existing in the national economy, and narrow assessment of the capacities of the particular claimant. The First Circuit Court of Appeals has held that a broad assessment of the national economy is more accurately and fairly performed at the administrative level than by vocational experts in each case. *Torres v. Secretary of Health and Human Services,*

677 F.2d 167, 169 (1st Cir.1982). The Court agrees with the First Circuit's view and holds that the Medical-Vocational Guidelines provide the ALJ with an appropriate frame of reference from which the particular claimant's occupational base, considering his additional nonexertional impairments, may be determined. *Id.*

■ The Social Security Administration regulations are clear and specific regarding the necessity for calling a vocational expert to testify. 20 C.F.R. § 404.1566(e). It is within the discretion of the ALJ; "We will decide whether to use a vocational expert or other specialist." (*Id.*) We therefore hold that it is within the discretion of the ALJ to decide if a vocational expert must be called to testify as to the specific jobs within a Grid category which would be available to a particular claimant with both exertional and nonexertional impairments.

■ In this case, the ALJ concluded that the claimant has a residual functional capacity for light work diminished by his manipulative deficiency in the right hand and handling deficiency in the right arm. However, he emphasized the fact that the plaintiff's left arm and hand are completely normal and are capable of performing a full range of light work. He concluded that the plaintiff's ability to lift and handle would only be slightly compromised by the nonexertional limitations in his right upper extremity, and therefore would not significantly decrease his occupational base for performing a full or wide range of light work. The ALJ exercised his discretion properly to determine that an expert vocational witness was not necessary under these circumstances. The plaintiff's contention that the ALJ abused his discretion is without merit. Since the ALJ's decision is supported by substantial evidence, it is affirmed.

## IV. CONCLUSION

Since the ALJ's decision denying the claimant benefits is supported by substantial evidence, his decision is affirmed and

the Secretary's motion for summary judgment is granted.

IT IS SO ORDERED.