**Duane E. CUMMINS, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 81–1731.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1982.

Decided Feb. 2, 1982.

Philip E. Burchett, Donat & Burchett, Lafayette, Ind., for plaintiff-appellant.

Steven J. Plotkin, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, MARKEY, Chief Judge,* and POSNER, Circuit Judge.

POSNER, Circuit Judge.

Duane E. Cummins applied for social security disability benefits. An administra-

* Of the United States Court of Customs and Patent Appeals.

tive law judge of the Department of Health and Human Services denied his application after a hearing in which Cummins was present and was represented by counsel. After exhausting his administrative remedies Cummins brought this suit in federal district court under 42 U.S.C. § 405(g) seeking review of the denial of his application. He consented to have his case heard before a federal magistrate who on cross-motions for summary judgment upheld the denial of benefits. His appeal from the magistrate's judgment challenges the validity and application of the standards by which the Department of Health and Human Services decides disability cases.

It will simplify this opinion first to assume that the facts were correctly found by the administrative law judge and then to consider whether those findings are supported by substantial evidence.

The ALJ found as follows with regard to Cummins' alleged disability. Cummins, 49 years old, of limited education but literate, had been variously a lumberyard worker, log cutter, and farm laborer—all jobs involving heavy manual labor. He had long been blind in one eye but this had not interfered with his work. An automobile accident several years earlier had left him with a permanent but, according to the ALJ, mild weakness on the right side of his body. He also had arthritis in his knees and right shoulder but he could walk without the aid of a cane and was capable (though he had never done it) of "sedentary work," defined in the applicable regulations as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The ALJ found, however, that Cummins was physically incapable of performing the heavy work that he had done before his automobile accident. He had been unemployed since the accident.

Putting to one side for a moment the finding that Cummins was blind in one eye, the ALJ's findings compelled him, under the applicable regulations, to hold that Cummins was not disabled within the meaning of 42 U.S.C. § 423(d), the statute under which Cummins was claiming. This statute defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least a year; and the impairment must be "of such severity that [the applicant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). The Department of Health and Human Services has promulgated regulations, under the authority granted it in 42 U.S.C. § 405(a), to determine whether an impairment is of the requisite severity. The current regulations were adopted in 1979 and appear in 20 C.F.R., Appendix 2 (Medical-Vocational Guidelines). Appendix 2 is basically a matrix of the four factors that section 423 makes relevant to deciding whether an individual who is disabled from doing his previous work, such as Cummins, can find other substantial gainful work. The factors are: the heaviest type of substantial gainful work the applicant can do; his age; his education; and his previous work experience. Once the administrative law judge has determined each of these characteristics for the particular applicant he consults the relevant table in Appendix 2, here Table 1, and literally reads off from the pertinent row in the table the conclusion that the applicant is or is not disabled. He has no discretion: "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a

conclusion as to whether the individual is or is not disabled." Appendix 2, § 200.00.

Cummins' characteristics, as found by the ALJ, put him in the row of Table 1 that is labeled Rule 201.18. This rule provides that if the applicant is 45–49 years of age, has limited or less education but is at least literate and able to communicate in English, has either no previous work experience or previous work experience limited to unskilled labor, and in his present condition is capable at most of sedentary labor as defined in 20 C.F.R. § 404.1567(a), quoted above, then he is—not disabled. That is the end of the case.

█ This mechanical approach has troubled some courts. See, e.g., *Santise v. Harris*, 501 F.Supp. 274 (D.N.J.1980). Cummins argues that the approach violates the statute—which requires that the Secretary's denial of an application for disability benefits be supported by substantial evidence, 42 U.S.C. § 405(g)—because the "grid," as the approach in Appendix 2 is popularly and aptly called, is not a proper substitute for evidence. Congress, however, has given the Department of Health and Human Services very broad authority to promulgate regulations. "The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence...." 42 U.S.C. § 405(a). We think it was not only lawful under this grant of power, but highly appropriate, for the Secretary to try to streamline the adjudication of social security disability cases and bring about some greater uniformity in the results of these adjudications—which we are told run to about 100,000 each year, made by hundreds of different administrative law judges. Nor does Appendix 2 dispense with evidence. It simply provides criteria, though binding criteria to be sure, for deciding whether the impairment found by the ALJ as a matter of fact is of the severity required by the statute before disability benefits can be awarded. If the statutory term "disability" described a historical fact best or only ascertainable on a case-by-case basis, binding criteria might be a problem; but it does not; it is a judgment that a person's health makes it exceedingly unlikely that he could find a job even if he looked hard for one everywhere in the United States. Such a judgment, to be well informed, requires a broad knowledge of the labor market. The Department of Health and Human Services has this knowledge and can both supplement and draw upon it in a rulemaking proceeding. It was entitled to substitute an institutional judgment for the *ad hoc* judgments of administrative law judges based on the testimony of vocational experts and other witnesses and on their own limited and variable knowledge of the labor market.

Although we accept the validity of establishing binding criteria of disability by rulemaking, the criteria must of course be reasonable; the statute explicitly requires that. But we do not have to evaluate Appendix 2 in its entirety in order to decide whether Rule 201.18 is reasonable. It does not seem unreasonable on its face and Cummins limits his criticism of it to two features: its binding character, which we have already discussed; and its alleged arbitrariness in borderline cases, of which his is one. Cummins was 49 years old. This placed him at the upper end of the age range in Rule 201.18. If he had been one year older he would have been deemed disabled by virtue of Rule 201.09, also in Table 1 of Appendix 2. But you cannot have borderlines without close cases. Because the judgment of disability is dichotomous, there will always be some line short of which the applicant is deemed disabled and beyond which he is not. If the Department had drawn the line at 49 rather than 50 Cummins would have been over it but some 48 year old would have had the same complaint that Cummins has under the present rule. We can find nothing unreasonable in the Department's choice of where to draw the line; it was to some extent arbitrary but that is in the nature of line-drawing.

We have assumed thus far that Cummins' characteristics fit the requirements of Rule 201.18 exactly, but in fact they did not, because he was blind in one eye. A vision impairment is "nonexertional" and therefore not encompassed in the definition of ability to do sedentary work. But of course if a man were completely blind he might well be incapable of sedentary work even if he had the requisite strength and mobility. The Department recognizes this and in cases where there is a nonexertional impairment the ALJ must go beyond the grid. He did so in a responsible manner here, finding that Cummins' blindness in one eye had not interfered with his previous work and would not interfere with sedentary work of which he was "exertionally" capable. This finding was one of fact and since it was supported by substantial evidence we have no power to disturb it. Cummins cites our decision in *Cannon v. Harris*, 651 F.2d 513 (7th Cir. 1981), but it is of no help to him. The plaintiff there had chronic alcoholism and "the ALJ made no findings with respect to its severity or its effect on plaintiff's residual functional capacity." *Id.* at 518. The required findings were made here and are, as mentioned, supported by substantial evidence.

Cummins also challenges the ALJ's finding that he had the exertional capability to do sedentary work as defined in the regulations. The ALJ agreed that if Cummins had the severe neurological disorder, severe intractable pain, and extremely limited mobility that he claimed to have he would be incapable of sedentary work. But the ALJ found against him on the facts, after considering the medical evidence in the case, which was disputed, and which we are not free to reweigh *de novo*; and after finding Cummins' own testimony not credible—a finding as to which our powers of review are even more limited. Cummins particularly complains of the ALJ's refusal to defer to the judgment of Cummins' personal physician. It is true that this physician had examined Cummins more extensively than anyone else; but as Cummins' personal physician he might have been leaning over backwards to support the application for disability benefits; therefore the fact that he had greater knowledge of Cummins' medical condition was not entitled to controlling weight. Even less compelling was the testimony of Cummins' wife. A trier of fact is not required to ignore incentives in resolving issues of credibility.

This is a "hard" (harsh, not difficult) case. Cummins turned 50 shortly after his eligibility for social security disability benefits expired. Extra-record evidence that we have no reason to doubt is truthful indicates that he recently suffered a heart attack. He remains out of work though he receives moderate disability benefits from the Veterans Administration under an unrelated statute. Possibly his prospects of obtaining substantial gainful employment of any kind since his automobile accident forced him to discontinue heavy work have never been more than theoretical. But the statute under which he claimed is not an unemployment insurance program; it is a disability program with very strict statutory criteria. His application for benefits was thoroughly reviewed both administratively and judicially. There is no remedy fairly within our power for the relief that he asks.

Affirmed.