**Donna AGGEN, Plaintiff**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 81–1068.**

United States District Court, D. South Dakota, N.D.

Aug. 24, 1982.

Kay F. Nikolas, Dakota Plains Legal Services, Sisseton, S.D., for plaintiff.

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., and David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

Plaintiff has appealed to this Court seeking relief from a determination by the Secretary of the Department of Health and Human Services that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 4(d)(3). Section 405(g) of 42 U.S.C. gives this Court jurisdiction to review a final administrative decision of the Secretary denying a claim for benefits under Title II of the Social Security Act. Plaintiff has exhausted her administrative remedies.

### I

In December, 1978 plaintiff Donna Aggen was involved in an automobile accident. At the time she was thirty-eight years of age and worked as a boiler attendant at the Basin Electric Power Cooperative in Bismarck, North Dakota. The accident fractured Plaintiff's back and ribs, dislocated

her hip, and injured her head and right knee. Prior to her accident, Plaintiff had recently acquired a graduate equivalency degree and an Associate Arts in power plant technology from Bismarck Junior College. Immediately after the accident, her lower limbs were paralyzed.

By April, 1980, when she applied for disability insurance benefits under the Social Security Act, Plaintiff had made significant progress. She was able to walk with the aid of a cane, perform light housework and drive her own car. By May of 1981, the time of her administrative hearing, Plaintiff's condition had continued to improve. She still needed the assistance of a cane to walk outdoors, however, and continued to suffer from pain and poor balance. She also reported experiencing some memory problems and problems controlling her bladder and bowel functions.

After Plaintiff's initial request for disability benefits was denied in April, 1980, Plaintiff filed a request for a hearing. On May 19, 1981, an Administrative Law Judge (ALJ) heard Plaintiff's testimony[1] and on June 19, 1981, the ALJ rendered a decision which granted Plaintiff disability benefits from July 1, 1979.[2] The ALJ determined, however, that Plaintiff had regained a residual functional capacity (RFC) for sedentary work as of May 19, 1981, and that her disability benefits should end July 31, 1981. When the Appeals Council denied Plaintiff's request to review the ALJ's decision, it became the final decision of the Secretary. *Martin v. Harris,* 666 F.2d 1153 (8th Cir.1981).

Plaintiff has appealed the ALJ's finding, asserting that there was not substantial evidence to indicate that Plaintiff had regained the necessary RFC to engage in sedentary work and that the ALJ denied her a full and fair hearing because the ALJ did not consider all vocational factors when he decided that Plaintiff's disability had ended. She seeks, in the alternative, out-

right reversal of the ALJ's finding or remand to the ALJ for further hearings. Defendant had answered that the ALJ's findings are supported by substantial evidence and are therefore conclusive. The parties have filed cross-motions for summary judgment. The Court grants Plaintiff's motion for summary judgment and remands the case to the Secretary for further proceedings.

## II

Summary judgment is appropriate when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Part of the dispute in this case appears to be the proper weight to give conflicting evidence. Despite testimony that Plaintiff continued to walk with difficulty, suffered pain when sitting and could not control her bodily functions, the ALJ determined that she retained an RFC to perform sedentary work. Plaintiff would have this Court reverse the ALJ's ruling because there is substantial evidence in the record to support a finding that Plaintiff is disabled.

Clearly, this Court has no power to reverse the ALJ on such grounds. If the ALJ's findings are supported by substantial evidence, those findings are conclusive for this Court. *Beasley v. Califano,* 608 F.2d 1162, 1166 (8th Cir.1979). Conceivably, a record could contain substantial evidence to support a finding of either disabled or not disabled. This Court cannot, however, substitute its own findings and weighting of the evidence for that of the administrative officer. *Satterfield v. Mathews,* 483 F.Supp. 20 (E.D.Ark.1979) *aff'd.* 615 F.2d 1288 (8th Cir.1980). The reviewing court is obligated to review the entire record and to evaluate all the evidence with the goal of determining whether that record contains substantial evidence supporting the ALJ's

---

1. Plaintiff was represented by a paralegal at her hearing.

2. Plaintiff's disability payments were not to begin until July, 1979, rather than December,

1978, because the ALJ found that plaintiff did not meet the earnings requirement of the Act until the later date.

finding. *Brand v. Secretary of Department of Health, Education and Welfare,* 623 F.2d 523, 527 (8th Cir.1980).

■ A part of this Court's evaluation of the record below must be a consideration of which party bears the burden of proof in each step of the case. Plaintiff bears the burden of establishing her disability. If she succeeds in showing that she is unable to return to her prior work because of her disability, the burden then shifts to the Secretary to prove that Plaintiff has the capacity to perform some other type of substantial gainful employment. *Gilliam v. Califano,* 620 F.2d 691, 693 (8th Cir.1980).

The Secretary found, and neither party disputes, that Plaintiff no longer can perform any of her past jobs, all of which required constant walking, standing and reaching. The question before this Court is therefore whether the record supports the finding that the Secretary has sustained his burden of proving that Plaintiff has the RFC to perform sedentary work that exists in the national economy.

### III

The ALJ relied on the "grid" found in Appendix 2 to subpart P of Part 404 to 20 C.F.R. to reach his conclusion that Plaintiff was not disabled. The "grid" indicated that Plaintiff could perform sedentary work. The "grid" was adopted by the Secretary pursuant to rulemaking mandated by 42 U.S.C. § 405(a) and is designed to carry out the definition of "disability" found in the Social Security Act, 42 U.S.C. § 423(d)(1). Designed to promote uniformity in decisions concerning Social Security applicants nationwide, the "grid" has recently received approval from the Eighth Circuit Court of Appeals sitting en banc. *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982). *McCoy* serves as the yardstick to measure the Secretary's findings in this case.

In affirming the use of the "grid" to mandate conclusions on an applicant's disability, the *McCoy* Court stated that "the 'grid' applies ... only in those situations covered by its own terms and the provisions of the Guidelines," *McCoy v. Schweiker, supra* at 1148 and that a "large measure of individualized adjudication remains a necessary condition precedent to the 'grid's' application ...". *Id.* The Secretary cannot use the rules of the "grid" to substitute for a searching factual inquiry into each applicant's physical condition, but must clearly establish a foundation for the application of the "grid."

In this case the Secretary does not appear to have established that the "grid" would apply. The Secretary did little to draw supporting evidence from the record, stating that since his "conclusion ... is most favorable to the claimant regarding the issue of disability, a complete and detailed recitation of all the evidence is unnecessary." Transcript at 11. Without a full recitation of the Secretary's evaluation of the evidence, his findings are conclusory.

### A.

■ The Secretary found that Plaintiff has an RFC to perform "sedentary" work so long as she could alternate between sitting and standing. The regulations define sedentary work as work that involves sitting and which involves a "certain amount of walking and standing." 20 C.F.R. § 404.-1567(a). Plaintiff testified that she was not able to sit upright for even short periods without suffering pain, but that she could sit in a recliner for periods of three to four hours. There is no showing by the Secretary that sitting in a recliner meets the definition of sitting necessary for sedentary work.[3] The regulations themselves require

---

**3.** The Secretary argues that testimony suggests that Plaintiff's intolerance to sitting is remediable and therefore not disabling. The Secretary relies on *Whaley v. Gardner,* 374 F.2d 9 (8th Cir.1967) where the Court ruled that an impairment cannot be considered a disability if the claimant could remove it "with reasonable ef-

fort and safety to himself." *Id.* at 11. The testimony in *Whaley* stated with certainty that treatment would resolve the claimant's problems within three to six months. The physician's report in Plaintiff's case, while acknowledging that Plaintiff has "very poor sitting tolerance", asserted that "the symptoms and

at least a consideration of postural limitations to a finding that an applicant has the requisite RFC. 20 CFR § 404.1546(d).

■ The Secretary appeared to base his conclusion that Plaintiff had regained an RFC for sedentary work primarily upon a physical examination performed within a week of the hearing. Although the report related significant residuals from Plaintiff's injuries, it also noted marked improvement in Plaintiff's strength, flexibility and balance. The examination was performed by Plaintiff's treating physician. The Eighth Circuit has pointed out that the residual functional capacity is usually the most important issue in a disability determination period. *McCoy v. Schweiker, supra,* at 1147. Given its importance, the RFC requirements must be met fully and projected into the long-range pressures of working at a job: "The RFC ... is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.* (Footnote and citation omitted).

■ The record as it stands is insufficient to support a finding that Plaintiff had on May 19, 1981, a residual functional capacity for sedentary work as it is defined in the regulations.

### B.

Testimony taken during Plaintiff's hearing and reports from examining physicians indicate that Plaintiff suffered memory lapses and difficulties in controlling her bladder and bowels. The Secretary in his memorandum characterizes these problems as speculative and that Plaintiff has not demonstrated that these impairments could be the basis of disability. As noted *supra,* in this phase of the proceedings, the Secretary carries the burden of showing that Plaintiff can hold down some other type of substantial gainful employment. Further, if the Secretary uses the grid to make that determination, he must ensure that the grid is applicable in each instance. *McCoy v. Schweiker, supra,* at 1147.

■ The Eighth Circuit Court of Appeals has interpreted the "grid" regulations to say that "[i]f a claimant has a non-exertional impairment, the Guidelines and grid are not controlling and cannot be used to direct the conclusion of disabled or not disabled without regard to other evidence, such as vocational testimony." *McCoy v. Schweiker, supra* at 1148. The regulations define non-exertional impairments as impairments which do not manifest themselves in limitations in meeting a job's strength requirements. 20 CFR Appendix 2, Section 200.-00(e). The evidence of memory problems, exacerbated by tension and pressure, warrants consideration by the Secretary as to whether the Plaintiff could function in a work environment. 20 CFR § 404.1546(c). Moreover, Plaintiff's evidence of difficulties in control of bladder and bowel functions further shows non-exertional impairments. Difficulties of this kind present obvious limitations to Plaintiff's ability to function in the work place. They may also limit the time that Plaintiff could spend continuously on a job and therefore her ability to hold down a job in a competitive market.

The considerations outlined in this point are not meant to direct conclusion of disabled or not disabled. They address the use of the "grid" in Plaintiff's case. The Secretary concluded that since Plaintiff met the criteria of the "grid", the "grid" dictated a result of not disabled. Since Plaintiff suffers from non-exertional impairments, however, the use of the "grid" was not appropriate. The "grid" may be used only when the claimant meets the physical criteria upon which the "grid" is based and does not suffer from other, non-exertional impair-

---

spasms might be lessened if she undertook an exercise program" (Tr. 100). The quality of this testimony does not come within the *Whaley* rule. In the *Whaley* case the physician testified to a reasonable medical probability that the claimant could diminish the impairment within a year. In this case, the physician speculated that exercise might help Plaintiff, and he offered no projection as to when the exercise might diminish the impairment.

ments. *McCoy v. Schweiker, supra* at 1148. With the presence of non-exertional impairments in Plaintiff's case, the factfinder here should have stayed completely away from the guidelines.[4] *Torres v. Secretary of Health, Education and Welfare,* 668 F.2d 67, 69 (1st Cir.1981) (cited in *McCoy v. Schweiker, supra* at 1148).

## C.

Finally, the only evidence in the Secretary's report that alternative employment exists in the national economy is the regulations themselves. In a case subsequent to *McCoy,* the Eighth Circuit Court of Appeals has stated, "The regulations in and of themselves are not substantial evidence. They cannot alone satisfy the burden of the Secretary to demonstrate capacity to perform alternative employment." *McGhee v. Harris,* 683 F.2d 256 (8th Cir.1982).[5]

 The ALJ in this case stated that his opinion was "based on the testimony at the hearing, my observations, and the medical evidence in the file . . ." (Tr. 12). The Court in *McGhee* stated that such a basis was insufficient. *McGhee, supra* at 260 n. 1. The *McGhee* Court further admonished that while it was one thing for an ALJ to weigh testimony, "it is quite another thing entirely . . . for an ALJ to determine that specific vocations exist for which the claimant is qualified, based apparently entirely on his own evaluation of medical evidence

and his own observation of the claimant." *Id.* Although the *McGhee* Court declined to specify what role the regulations and "grid" might properly play in a determination of disability, the Court was clear that the regulations by themselves were insufficient to carry the Secretary's burden.

## CONCLUSION

The teaching of the decisions recently issued by the Eighth Circuit Court of Appeals is that the Appendix 2 "grids" may be used in a narrow range of circumstances where the applicant meets all the criteria and terms of the regulations. Where an applicant suffers from further impairments, the Secretary must take evidence to determine that the national economy holds a niche for the individual applicant's special talents and limitations. Without such an investigation, the Secretary's findings are based on insufficient evidence. The *McCoy* and *McGhee* cases both point to the need for taking evidence from a vocational expert. Plaintiff's case is therefore remanded for further proceedings not inconsistent with this opinion.

---

**4.** Defendant argues that there is a threshold requirement for non-exertional limitations to take a case outside the "grid" regulations. Some Courts of Appeal have ruled that the grid may apply in the face of exertional and non-exertional limitations. *Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir.1981). The *Cummins* case is not applicable to the Plaintiff's case because the applicant in *Cummins* suffered from a non-exertional limitation before the disabling accident took place. He was blind in one eye. Despite that limitation, the applicant had held down jobs involving heavy manual labor. The Court ruled that if the limitation did not affect him in active labor, it would not affect his ability to perform sedentary work. *Cummins v. Schweiker, supra,* at 84.

In *Kirk* the Court ruled that a non-exertional limitation, to preclude application of the grid,

must restrict applicant's ability to participate in the full range of gainful employment at the designated level. *Kirk v. Secretary of Health and Human Services, supra,* at 537. That is the precise question presented by plaintiff's condition. The Secretary cannot remove doubt and assert that Plaintiff has not met the threshold requirement simply by ignoring the evidence of Plaintiff's non-exertional limitations.

In both *Kirk* and *Cummins* the factfinder had made specific findings regarding the non-exertional limitations. The ALJ in Plaintiff's case did not. Silence in the face of the evidence on the record will not carry the Secretary's burden to show that Plaintiff fit within the guidelines.

**5.** The *McGhee* court specifically noted that its opinion was consistent with *McCoy. McGhee v. Harris, supra,* at 261 n. 2.