**Rosie SIMS, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 85 C 7297.**

United States District Court, N.D. Illinois, E.D.

July 10, 1987.

Martha L. Tonn, Mary Elizabeth Kopko, Mid-South Office, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff.

William T. Clabault, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In this suit challenging a denial of social security disability benefits, we review the Report and Recommendation of Magistrate Elaine E. Bucklo ("Report") in which the Magistrate recommended that plaintiff Rosie Sims' claim be remanded for further consideration by the administrative law judge. Objections were filed by both the Secretary and Sims, although the Secretary moved to strike Sims' objections as untimely. For the following reasons, we overrule the Secretary's objections and adopt that part of the Magistrate's Report recommending the remand, but independently overrule one section of her Report.

## I. SECRETARY'S MOTION TO STRIKE SIMS' OBJECTIONS

Under provisions of the Federal Magistrates Act and the Federal Rules of Civil Procedure, a party who wants to file objections to a magistrate's report on a dispositive pretrial matter must do so within ten days of being served with a copy of the recommended disposition. 28 U.S.C. § 636(b)(1) (1982), Fed.R.Civ.P. 72(b). In this case, the Magistrate entered her Report on December 17, 1986, and it was mailed out on that day. The Secretary filed his objections on December 31, 1986, which constitutes a timely filing after applying the rules regarding computation of time. See Fed.R.Civ.P. 6(a), 6(e). On January 16, 1987, Sims filed a motion for leave to file her objections to the Magistrate's Report "instanter" on January 23, 1987. We allowed that motion, and Sims filed her response and objections pursuant to our order.

The Secretary raises procedural concerns regarding the timeliness of Sims' objections notwithstanding our order allowing them to be filed late. The Federal Rules allow for extensions of time for the filing of objections to magistrate's orders. Fed. R.Civ.P. 6(b); 12 C. Wright, A. Miller & F. Elliott, *Federal Practice and Procedure*

§ 3076.8 (West Supp.1986). However, Rule 6(b) establishes that once the original time provided has expired, the person moving for an extension of time must show that her "failure to act was the result of excusable neglect." Fed.R.Civ.P. 6(b). We have reviewed Sims' original motion for leave to file her objections late and find no indication or argumentation of excusable neglect. Notwithstanding the foregoing analysis, we deny the Secretary's motion because it is clear that we have the power to review *de novo* the questions raised in Sims' objections, as well as all other aspects of the Report, irrespective of the existence of formal objections. *See Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986) (interpreting 28 U.S.C. § 636(b)(1)(C) to permit the district court to accept, reject or modify, in whole or in part, the magistrate's recommendations *de novo* notwithstanding the failure of a party to file objections).[1]

## II. PROCEDURAL HISTORY

The plaintiff and claimant, Rosie Sims, filed a claim for Social Security disability benefits and supplemental security income under the Social Security Act on March 25, 1984, alleging a condition of disability commencing on May 24, 1983. Her applications were denied both initially and on reconsideration, after which Sims sought review from an administrative law judge ("ALJ"). The ALJ also denied her applications and the Appeals Council affirmed. Sims then filed this action under 42 U.S.C. § 405(g) (1982) seeking judicial review of the Secretary's decision. This Court initially referred the matter to Magistrate Bucklo for report and recommendation on the parties' cross motions for summary judgment. After a careful and thorough consideration of the issues, the Magistrate entered her Report which recommended remanding the case to the ALJ for further proceedings regarding Sims' claim of a nonexertional impairment related to severe problems with her visual acuity.

Born on May 25, 1930, Sims was fifty-four years old at the time of her initial hearing before the ALJ on December 7, 1984. According to her testimony, Sims had a sixth grade education and had worked in the past as a "masker" in an automobile plant. This job, which required standing, bending and stooping all day, involved masking certain parts of automobiles prior to painting. However, Sims has not worked as a masker since May 24, 1983, when she left her job because she could no longer stoop and bend. Sims' testimony revealed that her medical conditions included diabetes, arthritis and high blood pressure and that she had no feeling in her toes. She also testified regarding her poor eyesight. According to her testimony, Sims could sit for about half an hour but had to lie down after that, and could stand for about half an hour but could not lift anything. Furthermore, although she could perform some simple household functions, she experienced chest pains and shortness of breath upon exertion. In addition to the transcript of Sims' testimony at the administrative hearing, the record includes the reports of several physicians regarding Sims' various medical ailments.

## III. SECRETARY'S OBJECTIONS

■ The Secretary's objections address the only part of the Report on which he did not prevail before the Magistrate. The Magistrate found that the ALJ's decision that Sims' visual impairment did not justify a finding of "disabled" under the applicable standards was not adequately explained in order to enable this Court to undertake a proper review. Report at 12–13. The Secretary contends in his objections that the Magistrate incorrectly recommended a remand to the ALJ because the ALJ provided the minimal articulation of his reasoning and determination necessary to support his finding that Sims was not disabled.

The Social Security Act requires the Secretary to make findings of fact regarding an individual's application for disability

---

**1.** We observe that this question is entirely different from the issue recently addressed by the Seventh Circuit in *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986), regarding a party's waiver of the opportunity to present a question to the appellate court after failing to object to the magistrate's recommendation in the district court. *Delgado,* 782 F.2d at 82 n. 2.

benefits. 42 U.S.C. § 405(b)(1) (Supp. III 1985). Where the Secretary's decision is wholly or partly unfavorable to the claimant, he must render a decision containing a statement of the case, in understandable language, setting forth a discussion of the evidence and the reasons upon which the negative determination is based. *Id.* These steps are crucial in creating an adequate basis for judicial review, which an aggrieved claimant may pursue in the district court following an adverse determination by the Secretary. 42 U.S.C. § 405(g) (1982).

In *Stephens v. Heckler,* 766 F.2d 284 (7th Cir.1985), the Seventh Circuit discussed the standard of review to be applied to the Secretary's decisions. The Court expressed its concern that ALJs making the eligibility determination provide an adequate basis for meaningful review, but also stressed that ALJs need not delve into an unduly elaborate discourse on each individual case which might delay the expeditious processing of the numerous claims which they must address. *Id.* at 287–88. The statute itself requires the reviewing court to assess the quality of the evidence considered by the ALJ and to give deference to the Secretary's findings of fact to the extent that they are supported by "substantial evidence." 42 U.S.C. § 405(g) (1982). The Seventh Circuit requires that the ALJ provide a "minimal level of articulation" of his assessment of the evidence where considerable evidence of disability is provided by the claimant. *Stephens,* 766 F.2d at 287. Furthermore, the ALJ must always explain the rejection of uncontradicted evidence. *Id.* It is enough if the ALJ's opinion indicates to the reviewing court that he has considered the important evidence and enables the court to "trace the path of the ALJ's reasoning." *Id.*

Apparently in this case there was uncontradicted evidence of Sims' substantial visual impairment before the ALJ. In addressing the effect of the diminished state of Sims' visual acuity, the ALJ made statements which on their face seem clearly

contradictory. At one point, the ALJ wrote that "[a]fter careful evaluation of the evidence, it is the opinion of the undersigned that the claimant's visual impairment must be considered severe since it would significantly interfere with in [sic] ability to perform *all basic work activities.*" (R. 26) (emphasis added).[2] Nonetheless, the ALJ also concluded that Sims' visual impairment did not significantly compromise her capacity to perform a "full range of light work." (R. 29).

The Secretary maintains that the ALJ's decision sets forth the minimal level of articulation mandated by the Seventh Circuit in *Stephens.* We disagree. The ALJ's clearly contradictory conclusions were never reconciled in a manner which would allow this Court to trace the path of his reasoning. Furthermore, there is not enough information set forth in the ALJ's decision to permit a proper conclusion that he considered important and uncontradicted evidence. This is not a case such as *Stephens* where the ALJ's minimal level of articulation indicates that he performed his statutory duties. Here, there is a facial inconsistency which results in a decision which makes little sense. Thus, the question becomes one not of the ALJ's "literary skills," *see Stephens,* 766 F.2d at 287, but of his analytical consistency based on the evidence before him. As noted by the Magistrate, the ALJ made no evaluation of the types of jobs light work involves and how Sims could perform such tasks given her severe visual impairment. Report at 13. Because we agree with the Magistrate that the ALJ's deficient explanation of his conclusions regarding Sims' ability to do light work despite her severe visual impairment prevents this Court from conducting a meaningful review, we adopt the Report recommending a remand of this case to the ALJ to address these issues and overrule the Secretary's related objections.

## IV. DE NOVO REVIEW OF ISSUES RAISED IN SIMS' OBJECTIONS

We now address two aspects of the ALJ's decision which Sims argues should

---

**2.** Throughout this opinion, we refer to the certified copy of the administrative record filed with

this Court by the Secretary pursuant to 42 U.S.C. § 405(g) simply as "R. ___.").

not have been affirmed by the Magistrate. First, Sims claims that the ALJ's findings regarding her ability to perform light work were inadequate because they overlooked the issue of pain, about which she testified and which there was some objective evidence to support. Sims also contends that the ALJ applied the medical-vocational guidelines in the relevant regulations, commonly known as the "grids," in an unwarranted rigid manner despite the fact that Sims was just five months short of an age category which would have placed her in the disabled category based on all other relevant characteristics. As explained herein, we concur that the ALJ did not adequately explain his rejection of Sims' allegations regarding pain and remand for further findings on that issue, but we also conclude that the Secretary's strict application of the relevant grid was within the authority of the statute and should not be overturned by this Court.

### A. Pain [3]

Pain may be a condition supporting a finding of disability entitling an individual to Social Security benefits. The Social Security Disability Benefits Reform Act of 1984 provides specific guidelines, however, for the assessment of evidence of pain. The relevant provision states:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other

symptoms which may reasonably be accepted as consistent with the medical signs and findings) would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (Supp. III 1985).

The record shows that the ALJ considered the reports of at least three different physicians, including Sims' treating physician, in making his decision that pain was not a disabling condition in Sims' case. He concluded that there was evidence that Sims suffered from severe bilateral cataracts, diabetes mellitus, high blood pressure and mild to moderate arthritis. (R. 28). None of these conditions, he determined, qualified as or was equivalent to a "listed impairment" in the Social Security regulations which automatically qualify certain conditions as disabling. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (1986). Even in the absence of evidence to the contrary, the ALJ discussed, but apparently did not consider, additional medical evidence submitted indicating that Sims also had, among other things, an abnormal electrocardiogram ("EKG") reading, diabetic neuropathy, peptic ulcer disease, hypertensive heart disease, peripheral vascular disease and sharp substernal chest pains, a condition aggravated upon exertion. (R. 25–27, 219). Although some of these diagnoses were made by Sims' treating physician, whose evidence could under limited circumstances be considered with greater scrutiny than that of a consulting physician, *see Stephens v. Heckler,* 766 F.2d 284, 289 (7th Cir.1985), the ALJ did not specifically discount the treating physician's credibility. Thus, in Sims' case, there appears to have been objective medical evidence of

---

**3.** In considering the pain issue, the ALJ was addressing the fifth step of the five-step review process mandated by the Social Security regulations, which requires an examination of a claimant's ability to perform work other than what she was doing in the past based on her current age, education, past work experience and "residual functional capacity." *See generally Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

physiological conditions that might reasonably be expected to produce pain. Furthermore, Sims testified at her hearing that she had pain in her chest and legs. (R. 55, 62–63, 74).

The ALJ found generally that Sims' testimony regarding pain was not credible (R. 28), but he explained his reasoning only with respect to her testimony about leg pain. *Id.* at 27. In support of his finding that Sims' pain testimony was not credible, the ALJ cited the fact that there was evidence of a normal doppler test and that Sims had a normal gait without ambulation problems. (R. 27).[4] The ALJ also found it significant that Sims could take care of some personal needs, use public transportation without difficulty and perform small household chores. In light of all of his findings, the ALJ concluded that Sims could perform some "light work" as defined in the relevant regulations. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2 (1986). Thus, while the record was not devoid of any objective evidence supporting the ALJ's conclusion that Sims' pain was not a disabling condition, the question remains whether his decision was based on *substantial* evidence.

As discussed above, a reviewing court must give deference to an ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g) (1982). However, where an ALJ rejects uncontradicted evidence regarding the claimant's condition, he must provide some explanation. *Stephens,* 766 F.2d at 287. Pain may be considered as a disabling condition under the Social Security Act if medical evidence indicates "the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A); *Sparks v. Bowen,* 807 F.2d 616, 617 (7th Cir.1986). While the normal doppler test is some indication that the

peripheral vascular disease may not have been serious, the ALJ never discussed why he rejected the uncontroverted medical evidence regarding certain other conditions which might reasonably be expected to cause pain, such as Sims' moderate arthritis and diabetic neuropathy, a condition related to nerves, not blood flow. *See generally,* Morton, *Medical Proof of Social Security Disability* § 2.10 (1983). Furthermore, testimony regarding Sims' daily activities is not necessarily determinative of the claimant's ability to perform light work activities. *Pearson v. Bowen,* 648 F.Supp. 782, 790 (N.D.Ill.1986). Finally, there was little discussion regarding Sims' allegations of chest pains or the objective evidence of conditions to which such pain might have been attributed. Moreover, the ALJ did not discuss any specific contradictory evidence about the chest pains.

■ In conclusion, we find that the ALJ's decision is not supported by "substantial evidence" in light of his failure to discuss other objective medical evidence which might reasonably be expected to cause Sims pain in both her legs and her chest. The potential pain-causing conditions afflicting Sims must be considered on remand with respect to their overall impact on Sims' ability to perform "light work."[5] The statute explicitly requires the ALJ to consider objective medical evidence of pain established by medically acceptable clinical or laboratory techniques in determining disability resulting from pain. 42 U.S.C. § 423(d)(5)(A). Where a claimant testifies as to pain and there is some of this type of corroborating objective medical evidence, but the ALJ finds that the pain is not disabling, the ALJ should provide a reason for rejecting both the testimony and the evidence such that the reviewing court can trace the path of his reasoning that none of the alleged conditions could reasonably be expected to cause pain.

---

**4.** The doppler test is a manner of measuring blood flow in extremities and indicates the extent of any circulation problems.

**5.** In making these conclusions, the Court does not find that any of the conditions discussed could reasonably be expected to produce pain, but decides only that the ALJ should have considered whether they could and articulated his reasoning for rejecting them as supporting medical evidence for a condition of pain, as required by § 423(d)(5)(A).

Finally, we reject any claim that the ALJ should have independently examined potential psychological causes of Sims' pain even in the absence of any objective evidence in the record on that issue. The current legal standards do not require the ALJ to inquire into the presence of somatoform disorders or psychological conditions unless there is already some evidence in the record that such conditions may exist. *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir.1981); *see also Benson v. Heckler*, 780 F.2d 16, 18 (8th Cir.1985). There is no such evidence in the record herein. Accordingly, we adopt the Magistrate's recommendations on that point.

## B. Grid Application

There are various medical-vocational guidelines in the regulations which provide a mechanical format for placing individuals into the "disabled" or "not disabled" categories. Commonly known as the grids, these guidelines take into account the claimant's age, level of education and previous work experience as well as the maximum level of limited work she may perform. In the present case, the ALJ applied the grid to Sims with respect to her ability to perform "light work" despite her severe medically determinable impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2 (1986). The ALJ applied Rule 202.10 to Sims, indicating that he found her to be "closely approaching advanced age," of "limited or less" education and "unskilled" in previous work experience other than her own (which he had already concluded she could no longer do, R. 28). The grid requires a finding of "not disabled" for such individuals.

Sims does not argue that the ALJ did not put her into the correct categories, but maintains that the Social Security Act requires flexibility in the application of the grid for individuals who are very close to the next age category. At 54, Sims formally fit into the category of an individual "approaching advanced age" at the time of her hearing, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(g) (1986), but she was just five months short of her 55th birthday. Had she been 55 at that time, she would have been classified as an individual of "advanced age." 20 C.F.R. § 404.1563(d) (1986). This would have qualified her as disabled under the grid given her limited education level and previous work experience. The regulation describing these age categories explicitly acknowledges that "we will not apply these age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563 (1986).

The Supreme Court has upheld certain aspects of the validity of the grids, although which it has not specifically addressed age characteristics. *Heckler v. Campbell*, 461 U.S. 458, 464 n. 8, 103 S.Ct. 1952, 1956 n. 8, 76 L.Ed.2d 66 (1983). Even though there appears to be some dissatisfaction with the mechanical application of the age factor in other circuits, *see e.g., Eley v. Heckler*, 734 F.2d 724 (11th Cir. 1984), the Seventh Circuit denied an appeal on grounds similar to Sims', determining that the mechanical application of the grids for people in borderline age categories is consistent with the meaning and requirements of the Act and regulations. *Cummins v. Schweiker*, 670 F.2d 81, 83 (7th Cir.1982). As noted by the Seventh Circuit in *Cummins*, the regulations reflect the idea that once an individual is categorized, the rules direct a conclusion of disabled or not disabled. *Id.* at 83 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.-00(a) (1986)). Although the regulations allow for an adjustment of these conclusions upon the presentation of evidence, there is nothing in the record which reflects that Sims presented any evidence that she is somehow atypical of a 54 year old such that the ALJ should have classified her as being of "advanced age." Accordingly, we find no error in the ALJ's conclusion that Sims was not disabled under the grid for light work and adopt the Magistrate's Report on that score.

## V. CONCLUSION

For the foregoing reasons, the Secretary's objections are overruled and adopts the Magistrate's Report, with the exception of her finding that the ALJ's conclusions regarding pain as a disabling condition

were supported by substantial evidence, are adopted. Accordingly, we remand the case to the Secretary for further proceedings in which the ALJ must further evaluate his findings regarding Sims' visual impairment and its impact on her ability to perform "light work," as well as the objective medical evidence of conditions which might reasonably be expected to cause pain. It is so ordered.