831 F.2d 293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald BLEVINS, Plaintiff-Appellee,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellant.
 No. 86-3521
 United States Court of Appeals, Sixth Circuit.
 October 5, 1987.
 
 Before MERRITT, BOYCE F. MARTIN, Jr., and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Secretary of Health and Human Services appeals the district court's grant of disability benefits arguing that there was substantial evidence to support the administrative law judge's denial. The court below held that the administrative law judge improperly discounted uncontroverted medical evidence of a severe mental impairment and improperly made credibility determinations with regard to statements the claimant made during psychological and psychiatric examinations. We agree with the decision of the district court.
 
 
 2
 Donald Blevins was born in 1938 and attended school through the eighth grade. He worked most often as a press operator and held the position of assistant foreman when he ceased working in 1978. His insured status expired on March 31, 1982.
 
 
 3
 Blevins applied for disability benefits in April 1979. He claimed he became disabled in April 1978 when he aggravated a back injury that he had originally sustained in 1971 when he fell off a roof. His claim was denied and he did not appeal. In November 1982 Blevins applied a second time for benefits, again claiming disability because of a bad back. He also applied for supplemental security income. His case was heard by an administrative law judge in February 1984. During this hearing Blevins's counsel attempted to show that Blevins fulfilled the criteria of section 12.04 of the Listing of Impairments for functional non-psychotic disorders, 20 C.F.R. Part 404, Subpt. P, App. 1, and submitted evidence that Blevins's back pain was primarily the result of a depressed mental state rather than because of any physical abnormality.
 
 
 4
 In support of this argument Blevins offered the opinion of Daniel Weber, a psychiatrist, Steven Katkin, a clinical psychologist, and David Wilson, Blevins's treating physician. Dr. Weber, who examined the claimant in February 1983, stated that Blevins was virtually completely incapable of caring for his own personal needs, that his interests, habits, and daily activities were quite restricted, that he would have an impaired ability to relate to fellow workers and supervisors, and that his ability to withstand stress and pressure was very poor. He found Blevins able to understand and follow directions and to have an adequate attention span. His diagnosis was that the claimant had a substantial somatization disorder with some possible underlying depression.
 
 
 5
 Dr. Katkin examined Blevins in December 1983 and concluded that he suffered from psychogenic pain disorder accompanied by major depression. Dr. Katkin stated that Blevins seemed to fulfill the criteria contained in section 12.04 and noted specifically that Blevins exhibited significant depression, anxiety, and tension that interfere with his concentration and memory, persistent depressive affect with insomnia and suicidal ideation, obsession about pain, and marked restriction of daily activities and constriction of interests.
 
 
 6
 Dr. Wilson, a specialist in internal medicine, reported that he first examined Blevins in October 1981. He subsequently saw the claimant every two months in order to monitor Blevin's blood pressure and low back pain. In June 1983, he diagnosed Blevins's main problem as depression and stated that he suffered from a major depressive illness. In February 1984 Dr. Wilson wrote in a letter to Blevins's lawyer that he had been unable to determine when he began treating Blevins in 1981 the degree to which Blevins's back pain was psychological rather than physical. After treating him for two years, however, he had come to the conclusion that Blevins's main disability was his severe psychological problem. He doubted that Blevins would ever be gainfully employed. He stated that Blevins's psychological problems, including depression and anxiety, had been present since at least 1981.
 
 
 7
 The administrative law judge, in reaching his decision to deny benefits, acknowledged that Drs. Weber and Katkin generally agreed that Blevins had a somatization disorder or psychogenic pain disorder. The administrative law judge, however, wrote that he was unconvinced that Blevins had a somatization disorder, psychogenic pain disorder, or other mental or emotional impairment that would significantly limit his capacity for work related activities. He drew this conclusion based on his finding that Blevins's statements at the hearing were not credible and by deciding that in all likelihood Drs. Weber and Katkin had failed during their examinations to give adequate consideration to the possibility that the claimant was feigning symptoms in order to receive disability benefits. Thus, he gave their diagnoses little weight in reaching his decision, commenting that they were based on Blevins's 'exaggerated and voluntarily limited response to psychological testing.'
 
 
 8
 We find the administrative law judge's substitution of his opinion for the evaluation of professionally trained psychiatrists and psychologists to be impermissible. No medical evidence was presented that contradicted the findings of Drs. Weber, Katkin, and Wilson that Blevins suffered from a severe somatization or psychogenic pain disorder and depression, and no evidence was presented that contradicted Dr. Wilson's conclusion that Blevins was psychologically impaired before his insured status lapsed in 1982.
 
 
 9
 We think the administrative law judge erred in discounting the reports of the expert examiners because of his own doubts about the claimant's credibility during the hearing. 'Where a Hearing Examiner has received expert opinions on the issue of a claimant's ability to work and they are not repudiated in any respect by substantial evidence, an adverse decision should be set aside as based on suspicion and speculation.' Miracle v. Celebrezze, 351 F.2d 361, 378 (6th Cir. 1965); cf. Harris v. Heckler, 756 F.2d 431, 436 (6th Cir. 1985) (improper to reject uncontroverted evidence supporting complaints of pain simply because of claimant's demeanor at hearing). We find that the administrative law judge by disregarding uncontradicted opinion evidence improperly set himself up as an interpreter of medical knowledge. Ross v. Gardner, 365 F.2d 554 (6th Cir. 1966).
 
 
 10
 The administrative law judge further stated in his decision that even assuming Blevins suffered from a severe psychiatric problem at the time of the hearing, he was unable to conclude that Blevins was disabled prior to March 31, 1982. We disagree. The diagnoses of Drs. Weber, Katkin, and Wilson regarding Blevins's mental condition were made following the expiration of his insured status, but this fact alone does not automatically make their examinations irrelevant. Parsons v. Heckler, 739 F.2d 1334, 1340 (8th Cir. 1984). Because their evaluations related to Blevins's condition prior to the expiration of his insured status, they must be considered along with the other evidence in order to get a clear understanding of his mental condition as of March 31, 1982. Id.
 
 
 11
 After viewing the record as a whole, we conclude that the uncontroverted medical evidence supports or tends to support the application of the claimant and that the finding of the Secretary is not supported by substantial evidence. The decision of the district court determining that the claimant was disabled prior to the expiration of his insured status on March 31, 1982, is affirmed. The case is remanded to the district court for remand to the Secretary for the payment of benefits under both provisions of the Act.
 
 
 12
 WELLFORD, Circuit Judge, dissenting.
 
 
 13
 I dissent from the remand for payment of benefits in this case. There is substantial evidence, in my view, to support the Secretary's decision that when Blevins's insured status expired in 1982 he failed to demonstrate that he was disabled within the meaning of the Act. The ALJ, who had the opportunity to observe Blevins carefully, acted within his proper responsibility in setting forth 'his own doubts about the claimant's credibility during the hearing,' which action was summarily categorized as error by the majority as 'discounting the reports of expert examiners' on Blevins' mental state and the extent of his ability to relate to reality and to others. The mental condition relied upon by claimant is heavily dependent, in my view, on the credibility and believability of Blevins's own testimony. That so-called 'expert examiners' might believe Blevins and his statements about himself is not binding upon the ALJ in determining, or casting doubt upon, a claimant's credibility. Blevins gave the doctors a number of different stories about an alleged accident and the consequences of that accident and his claimed physicial disability.
 
 
 14
 The following constitutes the substance of an examination by Dr. Michael C. Welch, an orthopedic specialist, In January of 1982. Blevins complained of lumbosacral pain radiating into his left lower extremity and occasionally into the right lower extremity to the knee. He denied weakness in his lower extremities but did feel his backache was debilitating. Blevins again claimed that he had been injured in a car wreck in 1972, and that he was treated with bed rest and a brace and returned to work six months later. He claimed that he reinjured his back in 1977 while on the job. (These dates differ substantially from information given other doctors and his testimony at the hearing.) Since then he claimed inability to work, has worn a brace, and has taken medications. Examination showed him to be alert and cooperative though chronically ill appearing. He moved with hesitancy and complained of pain with movement. He was not using ambulatory aids at the time of the evaluation, but had 'severely' limited motion of his lumbrosacral spine 'due to complaints of pain and poor cooperation by the patient.' He walked with apparent great difficulty wincing in pain at the slightest movement. Examination of his lower extremities revealed that his reflexes were present and equal in both lower extremities and there was no measurable muscle atrophy. Muscle strength and straight leg raising could not be reliably treated due to lack of cooperation on the part of the claimant and exaggeration in response. X-rays showed what appeared to be old compression fractures of the L1 and L5 vertebrae with some slight disc space narrowing and sclerosis in the facet joints with mild osteoporosis. Dr. Welch felt that the claimant could best be characterized as having traumatic degenerative joint disease of the lumbar spine secondary to compression fractures at L1 and L5. Based on those abnormalities he could be expected to be limited to moderate amounts of stooping and bending, and no lifting over 20 pounds. It was thought that he had about a 10% disability of the body as a whole due to his orthopedic problems.
 
 
 15
 Dr. Koppenhoefer, moreover, in 1983, found there to be inconsistencies in his examination and that a definite diagnosis of disability was difficult to render. Dr. Weber, a psychiatrist, who examined Blevins in February of 1983 described him as large and seemingly healthy and vigorous. He found him to be generally cooperative and not psychotic. His speech was clear and coherent and he showed no evidence of hallucinations or delusions with memory unimpaired. (This would not, then, explain on psychiatric grounds the inconsistencies in Blevins's different versions of his accidents and their effect upon him). Dr. Weber did find plaintiff to suffer from a somatization disorder. Dr. Wilson, during the pertinent periods in 1981 and 1982, had not correctly diagnosed Blevins, or apparently had he attempted to do so, as having a somatization disorder, and admittedly had been unable to discern an emotional disorder until 1984. I would find this medical evidence, as the Secretary did, not to be persuasive evidence of a disabling condition in early 1982.[1]
 
 
 16
 The magistrate in a lengthy and reasoned decision supported by a number of recent decision by this court, found that there was substantial evidence to support the ALJ's decision. I would conclude that the district court erred in rejecting this report and recommendation. (The district court cited not a single authority after 1974 in support of its contrary decision. None dealt with emotional and somatization disorders.) All the objective manifestations of physical health, even a 'vigorous' and 'rugged' appearance, support the decision of the Secretary and of the magistrate in my view. The Secretary's treatment of the testimony and evidence of claimant, his wife, and Dr. Wilson, I believe, to be consistent with such treatment in Cummins v. Schweiker, 670 F.2d 81, 84 (7th Cir. 1982). These witnesses were also likely to have been 'leaning over backwards to support the application,' and the Secretary need not ignore their 'incentives' in respect to weighing credibility. Cummins at 84. See Halsey v. Richardson, 441 F.2d 1230, 1236 (6th Cir. 1971).
 
 
 17
 Even if this court were persuaded that the later psychiatric opinion and other evidence in this case regarding a much later discovered somatization disorder cast doubt on other contrary medical opinions and evidence indicating an ability to perform sedentary work in 1981 or early 1982, the proper remedy would be to remand to the Secretary for a more definitive psychiatric opinion than the ambiguous expressions of Dr. Weber and Dr. Katkin. At best, then, plaintiff is entitled to a remand for further specific consideration by the Secretary of the date of onset of Blevins's alleged somatization disability. Medical literature reflects that this disorder rarely is diagnosed in males, and usually takes place in the teen years. Compare Daley v. Secretary, (6th Cir. No. 85-1777, April, 1987, not for publication).
 
 
 
 [1]
 This does not even take into account the vocational consultant's (Parsons) testimony that Blevins had transferable skills and was able to do sedentary work. Dr. Parsons found Blevins to be prone to exaggerate his problems and conditions